**Martha GRIFFITH, Plaintiff,**

v.

**STATE OF COLORADO, DIVISION OF YOUTH SERVICES, Defendant.**

**Civ. A. No. 91–K–1581.**

United States District Court, D. Colorado.

Dec. 7, 1992.

George C. Price, Denver, CO, for plaintiff.

James M. Humes and Margaret Walton, Asst. Attys. Gen., Denver, CO, for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This employment discrimination case was originally assigned to the Honorable Alfred A. Arraj. Following his death, the case was transferred to me on November 17, 1992. The matter is pending before me on the motion of the The State of Colorado, Division of Youth Services, for summary judgment pursuant to Fed.R.Civ.P. 56. The court has jurisdiction under 28 U.S.C. §§ 1331, 1343(4). I have reviewed the briefs and exhibits submitted in this matter and conclude that oral argument would not materially assist my decision. For the following reasons, the motion is granted.

## I. FACTUAL BACKGROUND

Martha Griffith ("Griffith") has been employed by the State of Colorado, Division of Youth Services ("DYS") since May 13, 1983. Since October 1, 1987, she has worked at the Adams County Youth Services Center ("Center"), a juvenile detention center. She is currently employed as a supervisor of juvenile delinquents at the Center and is classified as a Youth Services Worker B. On March 5, 1990, Griffith met with Madline SaBell ("SaBell"), the personnel administrator for the DYS, and complained that she was being sexually harassed by her supervisor, John Grier ("Grier"), the assistant director of the Center. Griffith elected to proceed with an internal grievance and met with Larry Johnson ("Johnson"), the director of the Center, on April 3, 1990 to discuss her situation. Grier was suspended with pay one hour later, asked to leave the facility and following an investigation, terminated.[1] Griffith filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on April 4, 1990.[2]

---

1. A settlement agreement was apparently reached which allowed Grier to retire; however, he never returned to the Center after his April 3, 1990 suspension.

2. The Charge of Discrimination alleged that:

I. On a continuing basis I am being harassed in the form of verbal abuse, closer supervision, and less favorable terms and conditions of employment.

Griffith was given administrative leave with full pay from April 3, 1990 to August 8, 1990, although she worked part-time for a few weeks in July at another facility. She suffered no loss of wages, benefits or tenure as a result of this leave. Additionally, the DYS paid her therapy bills and provided her with workers compensation benefits to cover job-related stress.

A right to sue letter was sent to Griffith's attorney on June 11, 1991. She filed suit on September 12, 1991 alleging that she:

> was the subject of ongoing and continuous discrimination based on her sex and her race by Grier. Such discrimination included, but was not limited to, sexual harassment and disparate treatment ... Further, Plaintiff was the subject of continuing discrimination and retaliatory actions even after Grier was terminated from the Department. Such discrimination included, but was not limited to, unjustified denials of promotions.

Complaint at ¶¶ 6, 8.

## II. DISCUSSION

### A. Timely Commencement of the Lawsuit

■ DYS first asserts that the plaintiff failed to file her lawsuit in a timely manner. 42 U.S.C. § 2000e–5(f)(1) requires that a civil action brought pursuant to Title VII be commenced within 90 days of receipt of the right to sue letter from the EEOC. Griffith's attorney wrote to the EEOC on her behalf on April 15, 1991 requesting a right to sue letter. The letter was sent by the EEOC via certified mail to the plaintiff's attorney on June 11, 1991. The return receipt from the certified mail reflects that the letter was delivered to Griffith's attorney's office on June 13, 1991. Since this suit was filed September 12, 1991, DYS argues that the plaintiff was

one day late (at 91 days) commencing this action.

The plaintiff argues that her attorney did not actually receive the right to sue letter until June 14, 1991, and thus her suit was timely commenced on the 90th day. Griffith has submitted a copy of the right to sue letter and the envelope in which it arrived, both of which are date stamped June 14, 1991. She has also attached the affidavit of Sue Strickland ("Strickland"), Griffith's attorney's former receptionist. Strickland is the individual whose signature appears on the certified mail return receipt. Strickland stated that certified mail was either signed for at the law firm's front desk and date stamped as it came in, or was left in the firm's mailbox elsewhere in the building. Strickland stated that she would collect the mail from the box, sign the return receipts and leave them in the mailbox for the postal employee. She did not enter the date appearing on the return receipt, and opined that the postal employee either wrote the wrong date down when the letter was delivered to the front desk or that the letter was left in the firm's mailbox late in the day on the 13th of June, and not received in the office and date stamped until the next day. Strickland stated "unequivocally that the piece of certified mail in question was received in the offices of [the plaintiff's attorney] on June 14, 1991."

I am convinced that the plaintiff's attorney did not receive the right to sue letter in his office until the 14th of June. By filing the complaint at 4:05 p.m. on September 12, 1991, the 90th day after receipt of the letter from the EEOC, he timely commenced this lawsuit. The defendant's motion for summary judgment on this ground is DENIED.

### B. Griffith's Title VII Claim

#### 1. Damages Caused By John Grier's Alleged Harassment

■ The defendant next argues that Griffith has suffered no damages compen-

---

I am currently a Youth Worker 'B' and have been employed by the Respondent since on or about May, 1982.

No reason has been given for this treatment.

II. I feel I have been discriminated against because of my race, White, and my sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended, inasmuch as the Assistant Director, John Grier, Black, is continually making discriminatory comments about sex and race while he is harassing me.

sable by Title VII as a result of Grier's alleged harassment, and that the action should be dismissed as a matter of law. It argues that the remedies afforded by Title VII are limited to back pay, injunctions or other equitable relief, and that neither compensatory nor punitive damages are available. The DYS contends that since Griffith did not incur any loss of wages, benefits or tenure as a result of Grier's alleged harassment, no remedy is available to her under Title VII. The plaintiff responds by asserting that nominal damages are available in Title VII cases, and that victims of sexual harassment do not have to demonstrate a tangible economic loss in order to establish a violation of Title VII.

Title VII permits a court to "order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay ... or any other equitable relief as the court deems appropriate." 42 U.S.C. § 2000e–5(g)(1). Only equitable remedies are authorized; "compensatory and punitive damages are not available in Title VII employment discrimination suits." *Jackson v. Pool Mortgage Co.*, 868 F.2d 1178, 1181 n. 4 (10th Cir.1989); *Skinner v. Total Petroleum, Inc.*, 859 F.2d 1439, 1443 (10th Cir.1988). The Circuits are split, however, regarding whether "nominal damages" are appropriate as an equitable Title VII remedy.

A number of courts have stated that such damages are recoverable. In *Huddleston v. Roger Dean Chevrolet, Inc.* 845 F.2d 900 (11th Cir.1988), the Eleventh Circuit stated:

It is well settled that a plaintiff who alleges discrimination by sexual harassment does not have to demonstrate a "tangible loss" of an "economic character" in order to prove a violation of Title VII.

*Id.* at 905 (quoting *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 63–66, 106 S.Ct. 2399, 2403–05, 91 L.Ed.2d 49 (1986)). The Court added that "[t]he prima facie case for sexual harassment ... may entitle her to recover nominal damages and, thus she could become eligible for an award of attorneys fees." *Huddleston*, 845 F.2d at 905. The Eighth Circuit has stated that "nominal damages are appropriately awarded where a Title VII violation is proved even though no actual damages are shown." *Parton v. GTE North, Inc.*, 971 F.2d 150, 154 (8th Cir.1992); *see also Maney v. Brinkley Municipal Waterworks and Sewer Dept.*, 802 F.2d 1073, 1076 (8th Cir. 1986) (even if plaintiffs were not entitled to injunctive relief, "the court should still award them nominal damages of at least one dollar"); *Dean v. Civiletti*, 670 F.2d 99, 101 (8th Cir.1982) (per curiam) ("We find that having prevailed on the discrimination issue involving the Bismarck vacancy she is entitled to recover nominal damages of at least $1"). The Fourth Circuit added that "even if [the plaintiff] does not regain her job, [she] might be entitled to nominal damages and attorneys fees." *Katz v. Dole*, 709 F.2d 251, 253 n. 1 (4th Cir.1983). The First Circuit stated that a district court on remand should "consider whether nominal damages, along with attorneys' fees ... might be appropriate relief, as in a Title VII suit." *T & S Service Associates, Inc. v. Crenson*, 666 F.2d 722, 728 n. 8 (1st Cir.1981).

The Seventh Circuit, however, has decided that nominal damages are not available as equitable relief under Title VII. "[W]here reinstatement, back pay, and any other sources of compensatory damages are not available, the defendant must prevail." *Swanson v. Elmhurst Chrysler Plymouth, Inc.*, 882 F.2d 1235, 1240 (7th Cir.1989), *cert. denied*, 493 U.S. 1036, 110 S.Ct. 758, 107 L.Ed.2d 774 (1990).

Since damages are not equitable relief, most courts have held that damages are not available to redress violations of Title VII that do not result in discharge....

Several circuits have begun to suggest in *dicta* that nominal damages could be awarded in situations like these to create a remedy on which to tack an award of costs and attorney's fees. We believe the better view, in accord with the majority of decisions, is that no damages are available under Title VII. If Congress wishes to amend the provisions of Title VII to provide a remedy of damages, it

can do so. Until then, this court may only enforce the statute as written, and as currently written Title VII does not contemplate damages.

*Bohen v. City of East Chicago, Indiana,* 799 F.2d 1180, 1184 (7th Cir.1986) (citations omitted); *see also King v. Board of Regents of University of Wisconsin System,* 898 F.2d 533, 537 (7th Cir.1990) ("compensatory, nominal, and punitive damages are not available under Title VII"). The Fifth Circuit has adopted *Bohen* and held that its "rejection of nominal damages as a Title VII remedy is the correct interpretation of the statutory scheme ... Nominal damages ... are legal, not equitable relief and are therefore outside the scope of remedies available under Title VII." *Landgraf v. USI Film Products* 968 F.2d 427, 431 (5th Cir.1992) (footnote omitted).

The tenth circuit has not directly addressed the issue. In *Baker v. Weyerhaeuser Co.,* 903 F.2d 1342 (10th Cir.1990), the court affirmed without comment a district judge's award of $1.00 in nominal damages in a Title VII sexual harassment case. In *Derr v. Gulf Oil Corp.,* 796 F.2d 340, 344 (10th Cir.1986), the court stated:

> Because [the plaintiff] was a prevailing party and will be entitled to at least nominal damages, she is, regardless of the trial court's constructive discharge finding, entitled to reasonable attorney's fees.

One district court in this circuit has relied on these cases and awarded nominal damages in the amount of one dollar. *Campbell v. Kansas State University,* 780 F.Supp. 755, 767 n. 7 (D.Kan.1991).

I, however, do not believe that the Tenth Circuit had the issue of nominal damages properly before it in either *Baker* or *Derr.* Those circuits allowing nominal damages did so in passing, without explanation. Only the Seventh and Fifth Circuits have examined in any detail the character of nominal damages. I find their reasoning to be directly on point and persuasive. Nominal damages are compensatory in nature, and since Title VII provides for equitable

not legal relief, the defendant's motion for summary judgment must be GRANTED as to Griffith's claim premised on Grier's alleged sexual harassment.[3]

## 2. Retaliatory Discrimination And Denial Of Promotion

The defendant's final argument in support of summary judgment asserts that Griffith's allegation of retaliatory discrimination with respect to promotion is not factually specific, and in any event, was not the basis of a discrimination charge filed with the EEOC. It thus contends that she is barred from asserting this claim now. The DYS also argues that the plaintiff was ineligible for all relevant promotions within the applicable time period. The plaintiff argues that her retaliation claim is reasonably related to the charge filed with the EEOC and that a separate charge was unnecessary.

 It is of course true that a discrimination claim may not be filed in federal court if the plaintiff has not exhausted her administrative remedies. However,

> [w]hen an employee seeks judicial relief for incidents not listed in his original charge to the EEOC, the judicial complaint nevertheless may encompass any discrimination like or reasonably related to the allegations of the EEOC charge, including new acts occurring during the pendency of the charge before the EEOC.

*Brown v. Hartshorne Public School District # 1,* 864 F.2d 680, 682 (10th Cir.1988) (quoting *Oubichon v. North American Rockwell Corp.* 482 F.2d 569, 571 (9th Cir. 1973)). The Tenth Circuit added that "an act committed by an employer in retaliation for the filing of an EEOC complaint is reasonably related to that complaint, obviating the need for a second EEOC complaint." *Brown,* 864 F.2d at 682. *See also Malhotra v. Cotter & Co.,* 885 F.2d 1305, 1312 (7th Cir.1989) ("having once been retaliated against for filing an administrative charge, the plaintiff will naturally be gun

---

**3.** *See Pearson v. Federal Express Corp.,* No. 90–A–279, 1991 WL 180104 (D.Colo. September 9, 1991) (nominal damages not recoverable under Title VII).

shy about inviting further retaliation by filing a second charge complaining about the first retaliation"); *Babrocky v. Jewel Food Co. and Retail Meatcutter Union Local 320*, 773 F.2d 857, 864 (7th Cir.1985) ("The standard is a liberal one in order to effectuate the remedial purposes of Title VII, which itself depends on lay persons, often unschooled, to enforce its provisions"). I therefore conclude that allegations of retaliation are "reasonably related" to a charge of discrimination filed with the EEOC.

■ However, for a claim of retaliation to be reasonably related to a discrimination charge, the retaliation must have occurred after the date of the EEOC filing. Griffith filed her charge of discrimination with the EEOC on April 4, 1990, although she discussed her grievance with SaBell on March 5, 1990. Therefore, any alleged retaliation before these dates clearly could not have been of a retaliatory nature. Any alleged discriminatory conduct on the part of the defendant before April 4, 1990, must have been the subject of a specific EEOC filing. Because the plaintiff's charge was directed solely to sexual and racial harassment, other forms of alleged discrimination are not within its coverage. I will thus discuss only the plaintiff's allegations of retaliation which allegedly transpired after her charge was filed.

An examination announcement was issued by the DYS in July of 1990 to establish a list of employees eligible for promotion. Griffith took the exam on August 31, 1990, received a score of 80 and was ranked twelfth on the list. SaBell states in her affidavit that:

> Ms. Griffith was not referred for positions from that list because of her rank, score, availability or BFOQ [bonafide occupational qualification] (male only positions).

SaBell Affidavit at 3. The list expired on October 5, 1991. SaBell then states that because of a state-wide hiring freeze and an abundance of Youth Services Counselors in the DYS, "there have been no promotional nor open competitive announcements for Youth Services Counselors since 1990."

I conclude that the plaintiff has not raised a question of material fact, and that summary judgment should be granted in favor of the defendant. Griffith points to no specific position or promotion that could form the basis of her retaliation claim. I am convinced as a matter of law that Griffith was not the victim of retaliation. Therefore, the defendant's motion for summary judgment is granted.[4]

IT IS ORDERED THAT:

(1) the motion of the defendant, the State of Colorado, Division of Youth Services, for summary judgment on all aspects of the plaintiff's complaint is GRANTED.

(2) the motion of the defendant to strike the response of the plaintiff, Martha Griffith, is DENIED because it is moot.

---

**4.** I must note that in addition to the eleventh hour filing of the complaint in this matter, the plaintiff's attorney filed his response to the defendant's motion for summary judgment on the 8th of September, despite a September 4, 1992 deadline. At that time, he filed an affidavit on the plaintiff's behalf which was unsigned. After a number of queries from my chambers, an amended, signed version of this affidavit was filed on September 18, 1992. The DYS has moved to strike the plaintiff's response as untimely, but in light of my disposition of this matter, the motion will be DENIED as moot.