**JACKSON AND COKER, INC., Plaintiff,**

v.

**A.J. LYNAM and Connie M. Lynam, Defendants.**

**A.J. LYNAM and Connie M. Lynam, Plaintiffs,**

v.

**JACKSON AND COKER, INC., Defendant.**

Civ. A. Nos. 91–5127, 92–2311.

United States District Court, E.D. Pennsylvania.

Dec. 30, 1993.

Alan B. Epstein, Jablon, Epstein and Wolf, Philadelphia, PA, for A.J. and Connie M. Lynam.

Debbie R. Sandler, White and Williams, Philadelphia, PA, for Jackson & Coker, Inc.

## MEMORANDUM

ROBRENO, District Judge.

This case involves claims of religious discrimination and retaliation by A.J. Lynam ("Lynam") against his former employer, Jackson & Coker, Inc. ("Jackson & Coker" or "the Company"). In turn, Jackson & Coker seeks immediate repayment of a $65,000 loan it made to Lynam to assist him with employment relocation expenses. The jury found no discrimination in employment, but determined that Jackson & Coker had retaliated against Lynam as a result of Lynam filing a claim of discrimination with the Pennsylvania Human Relations Commission (the "PHRC"). The jury also found that the loan was not due for repayment until Lynam sold the house he vacated after he was transferred by the Company.

Before the Court are motions by the parties for judgment as a matter of law and for relief from the judgment. For the reasons set forth herein, the motion for judgment as a matter of law by Jackson & Coker will be granted, and the remaining motions by Jackson & Coker, A.J. Lynam, as well as those of Lynam and his wife, Connie (together with A.J. Lynam, hereinafter referred to as "the Lynams"), will be denied.

## I. BACKGROUND

Defendant[1] Jackson & Coker is a physician recruiting firm headquartered in Atlanta, Georgia, with operations throughout the country. Its clients consist generally of hospitals, clinics, or communities that are seeking to employ physicians. Plaintiff A.J. Lynam was hired by Jackson & Coker in February of 1988 as a marketing consultant in its Atlanta office, to solicit business from prospective employers. Lynam proved to be adept at his work, swiftly rising through the ranks of the Company's marketing department. In February of 1989, he was appointed director of marketing for the Northeast Region, effective March of that year. This was quickly followed by his appointment to the position of Vice–President of Marketing for the Northeast Region in August of 1989.

This promotion to the vice-president level required Lynam's relocation from Atlanta to Philadelphia. To assist him financially in the move, Jackson & Coker loaned the Lynams $65,000 towards the purchase of a new home in the Philadelphia area.[2] *See* Pl.'s ex. 12, 14. At trial, the evidence as to the terms of the loan conflicted. Lynam testified that the loan was intended to be interest free, with an indefinite date of repayment tied to the sale of his Georgia home. This testimony, however, directly contradicted the language of a promissory note that the Lynams had signed, which stated that interest would accrue at an annual rate of 12% and that the loan was due in six months or when the plaintiff's Georgia residence was sold. *See* Pl.'s ex. 16. Lynam testified that the additional terms were explained by Jackson & Coker executives to him as being technicalities, necessary to "get this thing registered," Tr. of 2/1/93 at 141, but not an alteration of the previously negotiated deal. The note in evidence was dated January 12, 1990, a date that Lynam claimed was added after he signed the note. The Lynams also signed a deed to secure debt[3], conveying their Georgia home to Jackson & Coker as collateral for the loan. Lynam testified that this deed was also altered without his consent after he signed it to include a representation that the underlying note had a due-date of June 12, 1990.

Lynam testified that throughout the course of his employment with Jackson & Coker, the subject of religion was repeatedly raised by Company executives. Indeed, the evidence at trial showed that a substantial number of the employees of Jackson & Coker belonged to the Church of Christ, a Christian denomination (the "Church"), and that many senior executives where members of the Church. Lynam also testified that at his second job interview, he was told by Charles Harris, vice-president for recruiting in Jackson & Coker's Southeast office, that, at one time, almost all of the Company's employees had been members of the Church, and that even now 80% of the employees were members. Harris also questioned Lynam about his religious beliefs, and his opinion about the Church. Lynam was advised that he was competing with two candidates who were members of the Church, and that he had "to be a better salesman than they are by more than just a little to get [the] job." Tr. of 2/1/1993 at 77. Lynam also testified that after his move to the Philadelphia office in early 1990, Kerry Lowrey, the vice-president of recruiting for the northeast, suggested that Lynam and his wife join the local congregation of the Church, and that Bill Dismuke, the president of Jackson & Coker, suggested the same. The Lynams resisted

---

1. Jackson & Coker is a plaintiff in Civil Action No. 91–5127, and a defendant in Civil Action No. 92–2311. The reverse is true for A.J. and Connie Lynam in each of those cases. For clarity's sake, the Court will refer to Jackson & Coker as "defendant" and the Lynams as "plaintiffs" throughout this Memorandum.

2. Jackson & Coker also agreed to pay the higher of the two mortgage payments the Lynams would have after they purchased a home in Philadelphia, pending the sale of their Georgia home. *See* Pl.'s ex. 13.

3. Under Georgia law, a deed to secure debt is a conveyance of property from a grantor to any person loaning money to the grantor, with the grantor entitled to a reconveyance of the title upon payment of the debt. *See* Ga.Code Ann. § 44–14–60 (1993). The original conveyance is solely for the purpose of providing security. *See id.* § 44–14–67; *Sapp v. ABC Credit & Inv. Co.*, 243 Ga. 151, 253 S.E.2d 82 (1979).

these entreaties, and during A.J.'s tenure with the Company they did not join the Church.

In August of 1990, Lynam was asked by Company senior management to step down from his position as vice-president of marketing for the Northeast region. According to Lynam, the reason advanced by the Company for the demotion was that he did not have "the proper image of a Jackson & Coker vice-president." Tr. of 12/1/1993 at 183. However, he was offered his former position as Marketing Manager in the Northeast region, a position that paid substantially less. Faced with a major reduction in salary, Lynam resigned on October 31, 1990. At that point, Jackson & Coker ceased to reimburse Lynam for the mortgage payments on Lynam's Pennsylvania home.

Prior to resigning from Jackson & Coker, Lynam retained the services of Leslie Hayes, Esq., a Philadelphia attorney. Lynam believed that his demotion was motivated by religious discrimination. After Lynam's resignation, Ms. Hayes attempted to amicably resolve Lynam's discrimination claim with the Company. On January 16, 1991, after negotiations with the Company failed to resolve Lynam's grievance to his satisfaction, Lynam filed a complaint with the PHRC, dual-filed with the Equal Employment Opportunity Commission (the "EEOC"),[4] claiming a constructive discharge on the grounds of religious discrimination. Lynam also applied for unemployment benefits on January 5, 1991, which were awarded on March 4, 1991.

Jackson & Coker did not initially contest the application for unemployment benefits. However, after the benefits were awarded, and after Lynam had filed his claim with the PHRC, Jackson & Coker appealed Lynam's award of unemployment benefits. The Company also made a demand on the Lynams that they repay the promissory note pursuant to its terms, i.e., with 12% interest, shortly after a PHRC fact-finding conference. *See* Tr. of 2/2/1993 at 6–8. This demand was followed in August 1991 by the institution of the first of the instant actions, *Jackson and Coker, Inc. v. A.J. Lynam and Connie M. Lynam,* Civ. A. No. 91–5127, seeking repayment of the note. Lynam, in turn, counterclaimed, alleging malicious prosecution, fraud, defamation, and breach of contract.

Jackson & Coker's actions led Ms. Hayes to believe she could become a potential witness as to any retaliation claim by Lynam against Jackson & Coker, and, therefore, she withdrew from the representation of Lynam. Lynam then retained a new lawyer, and through his new counsel, he amended the complaint with the PHRC to include a retaliation claim. After receiving a Notice of Right to Sue, *see* Pl.'s ex. 47, Lynam instituted the second instant action, *A.J. Lynam and Connie M. Lynam v. Jackson and Coker, Inc.,* Civ. A. No. 92–2311, in April of 1992, claiming religious discrimination and retaliation for the filing of a complaint with the PHRC and the EEOC. The cases were consolidated and tried jointly to the same jury.

After five days of conflicting testimony, the jury was asked to determine, upon written interrogatories, *see* Fed.R.Civ.P. 49(b), Lynam's claims for discrimination and retaliation,[5] Jackson & Coker's claim on the promissory note, and Lynam's counterclaim for breach of contract, i.e., Jackson & Coker's failure to continue paying the mortgage on the Pennsylvania home.[6] The jury returned a verdict in Jackson & Coker's favor on the discrimination claim, but found that the Company had retaliated against Lynam for his filing of a claim with the PHRC, awarding

---

4. It was uncontested that the complaint was duly filed with both the PHRC and the EEOC.

5. The jury deliberated solely on the claims under the PHRA, *see* 43 P.S. §§ 951–963 (1993), there being no right to a jury trial under Title VII, 42 U.S.C. § 2000e *et seq.*, prior to the enactment of the 1991 Civil Rights Act, *see Matthews v. Freedman,* Civ. A. No. 88–3127, 1993 WL 204164 (E.D.Pa. June 8, 1993) (collecting cases). The Supreme Court has granted certiorari on the retroactivity of the 1991 amendment. *See Land-*

*graf v. USI Film Prods.,* —— U.S. ——, 113 S.Ct. 1250, 122 L.Ed.2d 649 (1993).

6. Lynam had previously withdrawn his fraud counterclaim. The claims for abuse of process, specific intent to harm, and loss of consortium were dismissed, and the Court granted Jackson & Coker's motion for judgment as a matter of law on the defamation claim at the close of Lynam's evidence.

Lynam $62,440 in damages for monetary losses and nothing for emotional distress. In regards to the contract claims, the jury found that Jackson & Coker's obligation to pay the Lynams' mortgage ended when Lynam left the employment of the Company, that the Lynams had not failed to act reasonably in attempting to sell their Georgia home, that Lynam's obligation to repay the promissory note was not due upon ending his employment with Jackson & Coker, and that the terms of the note did not include interest.

As a result of the verdict, Jackson & Coker was directed to pay Lynam $62,440 in damages, but the Lynams were not obligated to repay Jackson & Coker the $65,000 they had borrowed until they sold their Georgia home.

## II. DISCUSSION

### A. *Lynam's arguments*

Lynam raises various points in his motion for judgment as a matter of law and for a new trial. For the following reasons, all of them are without merit, and his motion will be denied.

1. *Jackson & Coker's obligation to continue to pay the Lynams' mortgage after Lynam's termination of his employment relationship with Jackson & Coker*

█ As part of the compensation package offered to Lynam by Jackson & Coker when he was transferred to the Philadelphia office, Jackson & Coker promised to make the payments on the Lynams' Philadelphia mortgage until the Lynams were able to sell their home in Georgia. Lynam maintains that this duty survived his resignation from the Company in October of 1990, and that the only condition on the payments was that the Lynams engage in reasonable efforts to sell their Georgia property. This claim was contested by Jackson & Coker at trial. The Company pointed to a letter dated August 3, 1990, from Jackson & Coker to Lynam, stating that the payments would be made "as long as serious effort is made to dispose of [the Georgia] house *and you remain with Jackson and Coker.*" Pl.'s ex. 31 at 2 (emphasis added). At the close of evidence, Lynam moved for judgment as a matter of law on this issue. The motion was denied,

and the issue was submitted to the jury. The jury found that Jackson & Coker was not obligated to make the mortgage payments, and that the obligation to make mortgage payments had ended when Lynam resigned. Lynam now renews the motion. *See* Fed.R.Civ.P. 50(b).

In examining a motion for judgment as a matter of law, the court "must view the evidence in the light most favorable to the non-moving party and determine whether 'the record contains the minimum quantum of evidence from which a jury might reasonably afford relief.'" *Keith v. Truck Stops Corp. of Am.,* 909 F.2d 743, 745 (3d Cir.1990) (citations omitted) (quoting *Smollett v. Skayting Dev. Corp.,* 793 F.2d 547, 548 (3d Cir.1986)). The evidence must be reviewed in the light most favorable to the prevailing party, and all inferences must be drawn in its favor. *See In re Air Crash Disaster at Mannheim, Germany,* 769 F.2d 115, 123 (3d Cir.1985), *cert. denied sub nom. Schoenborn v. Boeing Co.,* 474 U.S. 1082, 106 S.Ct. 851, 88 L.Ed.2d 891 (1986).

Applying these standards to the conflicting evidence, the Court finds that a reasonable jury could have found that the letter correctly stated the terms of the agreement, i.e., that the payments were conditioned on Lynam's continued employment, and that the Company's obligations ceased when Lynam resigned his position. Given the employment relationship between the two parties and the circumstances surrounding the formation of the agreement (Lynam was being transferred to another city), a reasonable jury could have inferred that the contract was made to encourage Lynam to accept the transfer and remain with the Company. The jury was entitled to reject Lynam's interpretation of the contract, i.e., one guaranteeing indefinite payments from Jackson & Coker notwithstanding the end of Lynam's employment with the Company.

█ In the alternative, Lynam requests a new trial on the issue of the mortgage payments, on the grounds that the jury's verdict was against the "overwhelming" weight of the evidence. A new trial on the grounds that a verdict is against the weight

of the evidence will only be granted to prevent a miscarriage of justice. *See Dunn v. HOVIC*, 1 F.3d 1362, 1364 (3d Cir.1993), *modified on other grounds*, 13 F.3d 58 (3d Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 650, —— L.Ed.2d ——, 62 U.S.L.W. 3409 (U.S. Dec. 13, 1993); *Klein v. Hollings*, 992 F.2d 1285, 1290 (3d Cir.1993). Given the evidence in the record concerning the transfer of Lynam to the Philadelphia area and the letter of August 3, 1990, the Court finds that allowing the verdict to stand in the instant case would not be a miscarriage of justice.[7]

2. The jury's verdict on the religious discrimination claim

■ The jury returned a verdict against Lynam on the issue of religious discrimination, finding that (1) he failed to establish by a preponderance of the evidence that his religion was a motivating factor in Jackson & Coker's decision to demote him and (2) he failed to establish that the proffered reasons were pretextual. Lynam now requests a new trial on these issues, claiming again that the evidence of discrimination was "overwhelming."[8] In support of this claim, Lynam relies almost totally on his testimony during direct examination. However, his own contention that he was discriminated against by the Company because he was not a member of the Church of Christ was effectively rebutted by the testimony of various current and former employees of Jackson & Coker who testified that Lynam received the fastest promotion in the Company's history, and that, in fact, he was promoted ahead of people who were members of the Church. Lynam's own testimony established that he received an interest-free loan to purchase a new home,[9] and that he was hired by the Company even though the Company knew he was not a member of the Church.

Moreover, there was ample testimony that the Company was entirely justified in demoting Lynam because his performance was not up to par with that of other regional vice presidents. Phil Hoggard, Jackson & Coker's executive vice-president for recruiting during Lynam's tenure at the Company, testified that the marketing department in the Northeast region ranked last in production among the Company's seven regions during the period Lynam headed the department as vice-president. Given this evidence, the Court finds that a reasonable jury could have concluded that Lynam was not discriminated against because of his religion, but rather, was demoted when he failed to perform satisfactorily in his new job.[10] *See Klein*, 992 F.2d at 1295 ("Where evidence is in conflict and subject to two interpretations, the trial

7. Lynam's exception concerning the Court's instruction on the burdens of proof regarding implied contracts is similarly without merit. While Lynam's counsel objected at the close of the instructions to the charge on implied conditions, on the grounds that there was no evidence in the record to support it, *see* Tr. of 2/8/1993 at 173, counsel did not state "distinctly the matter objected to and the grounds of the objection." Fed. R.Civ.P. 51. There was also no objection to the form of interrogatory. Therefore, the current argument that the Court erred in instructing on the burden of proof was waived.

Even assuming *arguendo* that there was no waiver, the Court finds that its instruction on the issue was correct. Lynam had the burden of establishing the terms of the oral contract. Once the jury determined that the obligation to continue repayment was *not* outstanding at the time of trial, *see* Interrogatory # 9; Tr. of 2/9/1993 at 19, it had to determine when the obligation actually ceased. The phrasing of the charge merely recognized that if Lynam failed to establish that the only condition precedent to Jackson & Coker's continued payment of the Philadelphia mortgage payments was his continuing good faith effort to sell the Georgia home, then the only alternative interpretation was for the jury to find that Jackson & Coker's obligation to make mortgage payments ended when Lynam left his position with the Company.

8. To the extent Lynam's brief requests judgment as a matter of law on this issue, such a request will be denied, Lynam having failed to move for such a judgment during the course of trial. *See* Fed.R.Civ.P. 50(b).

9. Since the Lynams were successful on their claims concerning the interest to be charged on the loan, the Court will interpret that element of the contract in the light most favorable to them.

10. Of Lynam's initial success with the Company and his later disappointing performance, it could be said that, as Laurence Peter has observed, "[i]n a hierarchy, every employee tends to rise to his level of incompetence." Laurence J. Peter & Raymond Hull, *The Peter Principle* 7 (1969).

**1048**

judge should be reluctant to grant a new trial.").

### 3. The charge on mixed-motive analysis and pretext analysis

■ During the course of the trial, the Court on a number of occasions sought the input of counsel as to whether the jury should be charged under the mixed-motive, *see Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), or the pretext form of analysis, *see Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), or both. *See* Tr. of 2/4/1993 at 93–100; Tr. of 2/5/1993 at 165–78; Tr. of 2/8/1993 at 10–13. After several colloquies with counsel, the Court concluded that the charge would include instructions on *both* methods of proving a Title VII claim. In doing so, the Court relied on the Eighth Circuit's Pattern Jury Instructions, which contemplate submitting to the jury the issue of discrimination on both methods in borderline cases, *see* Manual of Model Civil Jury Instructions for the Eighth Circuit 5.92, the decision by the Second Circuit in *Ostrowski v. Atlantic Mutual Insurance Cos.*, 968 F.2d 171, 181 (2d Cir.1992) (suggesting that the jury must examine both pretext and mixed-motive), and the Supreme Court's decision in *Price Waterhouse* itself, which counseled that the determination of which theory was appropriate was a matter to be left to the fact-finder, *see Price Waterhouse*, 490 U.S. at 247

n. 12, 109 S.Ct. at 1789 n. 12 ("If the plaintiff fails to satisfy the fact-finder that it is more likely than not that a forbidden characteristic played a part in the employment decision, then she may prevail only if she proves, following *Burdine*, that the employer's stated reason for its decision is pretextual."). *See also Foster v. University of Arkansas*, 938 F.2d 111, 113 (8th Cir.1991) (affirming, without discussion, a lower court's charge to a jury on both mixed-motive and pretext).[11] The interrogatories propounded to the jury were designed to conform to the charge. The jury found both that Lynam had failed to prove that religion was a motivating factor in Jackson & Coker's decision to demote him, and had failed to prove that Jackson & Coker's articulated reason for the demotion was pretextual. *See* Tr. of 2/9/1993 at 17–18.

■ Lynam now claims that the instructions on pretext analysis under *McDonnell Douglas* should not have been given since there was direct evidence of religious discrimination in the record, and that giving the pretext instruction, in addition to the one on mixed-motive, was confusing to the jury. This argument will not lie given that Lynam failed to object to the jury instruction of which he now complains and, in fact, he specifically consented to it.[12] In the absence of plain error, which Lynam does not assert in this case, it is hornbook law that an objection not preserved during trial may not be raised in a post-trial motion. *See* Fed. R.Civ.P. 51; *Dunn*, 1 F.3d at 1378; *Don Kemper Co. v. Beneficial Standard Life Ins.*

**11.** At the time the case was tried, the Court did not have the benefit of the Third Circuit's guidance on the issue, as expressed in *Griffiths v. CIGNA Corp.*, 988 F.2d 457, 468–72 (3d Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 186, 126 L.Ed.2d 145 (1993), which now directs the district court to make a determination at some point during the proceedings as to whether a case should proceed under the mixed-motive or pretextual method of analysis. *See id.* at 472.

**12.** Throughout the trial, counsel appeared undecided whether to request an instruction on "mixed motive" or "pretext", or both. *See* Tr. of 2/4/93 at 94, 96; Tr. of 2/5/93 at 165. The final colloquy with the Court on the issue reflects this ambivalence:

> THE COURT: ... [Y]ou are telling me that a—and I don't want to get a concession from you [if] this is not so—that if both charges were

given, even though they may not be [in] the intellectually purest form, that would not be a position that would prejudice [your] client that you could live with. If that's not so, let me know.

> MR. EPSTEIN: That is so.

*Id.* at 174.

The Court notes with disapproval the lack of candor on the part of plaintiff's counsel in now contending that he had requested an instruction on "mixed motive" without also noting that he had requested at an earlier point in the trial an instruction on both methods of proof, *see, e.g.,* Tr. of 2/4/1993 at 96 ("I think that they can find either way and I would like both instructions given.") (statement of plaintiff's counsel). *See* Pa.R.Professional Conduct 3.3.

*Co.*, 425 F.2d 221, 222 (3d Cir.1970); 9 Wright & Miller, *Federal Practice and Procedure: Civil* § 2553 (1971). Because Lynam failed to object to the jury charge of which he know complains,[13] "stating distinctly the matter objected to and the grounds of objection," Fed.R.Civ.P. 51, his current exception will not lie.

4. Exclusion of testimony on the Church of Christ

■ Jackson & Coker moved *in limine* to preclude the testimony of Lynam's expert, Professor Gerry O'Sullivan. Professor O'Sullivan was proffered as an expert on the teachings and history of the Church of Christ. Prior to trial, the Court excluded the expert testimony, as well as any mention of the Church's evangelical policies, on the grounds that (1) the Church's policies were not on trial in the case, (2) the imputation of such policies to Jackson & Coker would be unfair, and (3) the introduction of evidence of that nature would result in confusion of the jury and delay of the trial as the parties sought to establish the nature of the Church's teachings. *See Jackson & Coker, Inc. v. Lynam*, 812 F.Supp. 55, 57 (E.D.Pa. 1993). The Court sees no reason why it should revisit the issue, especially since Lynam's current arguments simply restate, without more, those presented at the time the motion *in limine* was ruled on by the Court.

5. Instruction on emotional damages for the retaliation claim

■ During the charge, the Court instructed the jury that they could award Lynam damages for emotional distress if the "distress he suffered went beyond that ordinarily experienced when one is demoted or forced to defend a claim." Tr. of 2/8/1993 at 163. At the close of the charge, Lynam objected, and Jackson & Coker agreed, that this charge was incorrect in that it required the jury to offset any distress suffered by Lynam by that level of distress accompanying a normal demotion or lawsuit. The Court modified the charge by giving a further instruction:

> You may recall that I instructed you that if you find that Mr. Lynam was unlawfully discriminated or retaliated against and that he suffered emotional distress, that you could award him damages for such emotional distress. In doing so, you need not subtract or reduce from that amount that amount of damages that may ordinarily be experienced by one who is demoted.
>
> In other words, the damages which a person experiences or the emotional distress which a person experiences when he is demoted for a non-discriminatory reason should not be relevant to your analysis.

Tr. of 2/8/1993 at 187–88. At the close of this supplemental charge, the Court asked the parties if there was anything else to be taken up by the Court before the jury was sent to deliberate, and counsel for both parties replied in the negative. *See id.* at 188. Lynam now argues that the Court committed error because the supplemental charge only corrected the standard on the discrimination claim and failed to mention the correct stan-

---

**13.** At the close of the Court's instructions, after having instructed the jury on both methods of proof, the following colloquy ensued between the Court, Mr. Epstein, counsel for the Lynams, and Ms. Sandler, counsel for Jackson & Coker:

COURT: Okay, do you have anything, Ms. Sandler?

SANDLER: I was going to object again on the record for the jury being charged on both *Price Waterhouse* and *McDonnell Douglas*.

COURT: Okay.

SANDLER: I just wanted to make sure the record is clear on that.

COURT: You would like—you wanted to have it just be the pretext and—

SANDLER: Right. Our position—just so the record is clear—our position is that the threshold under *Price Waterhouse* wasn't met, so it shouldn't have been charged.

EPSTEIN: *I don't think I have to object again, we have made it clear on the record. My position with that. I think that perhaps both, but it should be—it can be either or.*

COURT: Right.

Tr. of 2/8/1993 at 184–85 (emphasis added). Mr. Epstein's apparent effort to incorporate earlier, unspecified objections, given the shifting positions taken by the plaintiffs during the trial, *see supra* note 12, does not comport with the requirements of Federal Rule of Civil Procedure 51.

dard for the retaliation claim.[14]

Again, Lynam's failure to "stat[e] distinctly the matter objected to and the grounds of the objection," Fed.R.Civ.P. 51, failed to preserve this issue.

### 6. Jury's finding on emotional distress damages was against the weight of the evidence

■■■ Although the jury found that Jackson & Coker had retaliated against Lynam, they awarded no damages for any emotional distress caused by that retaliation. Lynam now argues that this conclusion was against the weight of the evidence, pointing specifically to the testimony of Connie Lynam:

Q: What was your reaction and A.J.'s reaction when they stopped—when they contested the unemployment compensation and then brought suit against you for the $65,000?

. . . .

A: I was scared. I was petrified. We were absolutely horrified. We were in a place where we didn't know many people. . . . We just were scared to death. We were scared to death. We didn't know what to do.

. . . .

I felt like they were trying to crush us. I felt like an annoying gnat flying around their head, that they figured they could just swat and make us go away. And I'm not going to let—I'm not going to be treated like that. . . .

. . . .

We have been devastated by this.

Tr. of 2/4/1993 at 59–60. Lynam argues that this testimony concerning emotional distress was unrebutted and therefore supported an award of damages. Lynam concludes that the jury's award of zero damages is against

the weight of the evidence and must be set aside.

■■■ The issue of whether or not the Lynams suffered emotional distress is one that was easily understood by the jury and thus the Court's discretion in considering Lynam's motion for a new trial is limited. *See Klein*, 992 F.2d at 1290; *Hourston v. Harvlan, Inc.*, 457 F.2d 1105, 1107 (3d Cir.1972). The jury was expressly instructed that it was solely within its province whether to credit the testimony of any witness. *See* Tr. of 2/8/1993 at 135. Therefore, the answer to Lynam's argument is that, even if uncontradicted, the jury may have simply disbelieved Ms. Lynam's testimony, particularly in light of the fact that it was uncorroborated. *See Bhaya v. Westinghouse Elec. Corp.*, 832 F.2d 258, 262 (3d Cir.1987) ("Evaluation of witness credibility is the exclusive function of the jury, and where the only evidence of intent is oral testimony, a jury could always choose to discredit it."), *cert. denied*, 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989). Viewing the evidence from the viewpoint of the successful party, *see Gebhardt v. Wilson Freight Forwarding Co.*, 348 F.2d 129, 132–33 (3d Cir.1965), a reasonable jury could have rejected the testimony of a party and concluded that the Lynams did not, in fact, suffer any emotional damage.

### 7. Refusal to submit the claim for punitive damages to the jury

■■■■ Lynam's complaint included a claim for punitive damages under the Pennsylvania Human Relations Act (the "PHRA"). Though the Pennsylvania Supreme Court has not addressed the issue, the Courts of this District have overwhelmingly concluded that there is a right to punitives under the PHRA. *See Bertels v. Merck & Co.*, Civ. A. No. 91–6281, 1993 WL 29123, at *5 (E.D.Pa. Feb. 4, 1993) (citing cases); *Galeone v. American Packaging Corp.*, 764 F.Supp. 349,

---

**14.** This error was exacerbated, according to Lynam, by the special interrogatory, which "did nothing to correct the misperception," Pl.'s Brief at 20, that there was a higher threshold for establishing emotional distress damages. This exception is also without merit, since Lynam did not object to the interrogatory before the charge was given. *See* Tr. of 2/8/1993 at 122–29. In fact, the interrogatory given to the jury used substantially the same language Lynam used in his proposed jury interrogatories. *See* Pl.'s Proposed Jury Interrogatories (Revised) ¶ 14. Taken together with the charge and the curative instruction, the interrogatory was not defective. *See Gallick v. Baltimore & Ohio R.R. Co.*, 372 U.S. 108, 121, 83 S.Ct. 659, 667, 9 L.Ed.2d 618 (1963) (holding that an interrogatory must be examined "in the context of the charge").

351–52 (E.D.Pa.1991) (same). This Court sees no reason to disagree with its sister courts. Under Pennsylvania law, punitive damages may be awarded as a penalty for conduct which is:

> outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others. In assessing punitive damages, the trier of fact can properly consider the character of the defendant's act, the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause and the wealth of the defendant.

*Martin v. Johns–Manville Corp.,* 494 A.2d 1088, 1096 (Pa.1985) (adopting Restatement (Second) of Torts § 908(2)). Outrageous conduct is defined as " 'acts done with a bad motive or with a reckless indifference to the interests of other.' " *Cain v. Hyatt,* 734 F.Supp. 671, 686 (E.D.Pa.1990) (quoting *Chambers v. Montgomery,* 411 Pa. 339, 192 A.2d 355, 358 (1963)); *see Chuy v. Philadelphia Eagles Football Club,* 595 F.2d 1265, 1277 (3d Cir.1979). Punitives should only be imposed on a civil defendant "where the conduct complained of is especially egregious." *Martin,* 494 A.2d at 1096–97 (citing Restatement (Second) of Torts § 908 cmt. b).

At the close of the charge conference, the Court ruled that there was insufficient evidence to present the issue of punitive damages to the jury. The Court, citing *Chuy,* declined to find that a mere showing of liability, i.e., that Jackson & Coker had discriminated or retaliated against Lynam, would suffice to establish outrageous conduct. Lynam now argues that the record did support the submission of punitive damages to the jury, pointing to evidence that Jackson & Coker appealed the unemployment compensation decision and filed suit on the promissory note in retaliation for Lynam's filing of his claim with the PHRC.

The Court remains unconvinced. It is uncontested that Jackson & Coker had a legal right both to contest the compensation decision and to file suit. The commission of these two actions alone does not rise to the level of outrageous conduct that would merit the imposition of punitives. Jackson & Coker's behavior did not rise to the level of egregiousness that would warrant submission of the issue of punitives to the jury. *See Martin,* 494 A.2d at 1096–97. Even accepting all of the testimony in the light most favorable to Lynam, and drawing all reasonable inferences in his favor, the record lacked that minimum quantity of evidence needed to support a verdict granting punitive damages. *See Keith,* 909 F.2d at 745.

**B.   *Jackson & Coker's arguments***

■ Jackson & Coker raises two issues in its motion for judgment as a matter of law and for a new trial. The Court will grant the motion for judgment as a matter of law on the issue of retaliation on the grounds that there was no evidence in the record to support the jury's award of damages.[15]

The jury found that Jackson & Coker retaliated against Lynam for his filing of a claim with the PHRC, answering the interrogatories that presented the mixed-motive method of proof in the affirmative, and never reaching the interrogatory dealing with pretext. *See* Tr. of 2/9/1993 at 18. They awarded Lynam $62,440 in damages for the monetary loss he suffered due to the retaliation. Though Lynam presented testimony as to his damages for the *discrimination* he experienced at Jackson & Coker due to his religion, he offered none on his damages for the claim of retaliation. Connie Lynam did testify as to the distress she experienced when Jackson & Coker contested the unemployment benefits and instituted its lawsuit on the promissory note, *see supra* page 18 (quoting Mrs. Lynam's testimony concerning her emotional distress), but as discussed above, it was within the jury's province whether to credit or disbelieve her testimony. The issue was specifically addressed by the jury in a separate interrogatory, with the jury awarding zero damages. Lynam also argues that the attorney's fees incurred as a result of Ms. Hayes's work on his behalf provided a basis for the jury award of damages on the retaliation claim. This is incorrect. The testimony of

---

15. Should the Court's granting of the judgment as a matter of law be overturned, the Court finds that a new trial is required on the issue of damages, given the insufficiency of the evidence concerning that issue. *See* Fed.R.Civ.P. 50(c).

Ms. Hayes concerning her hours billed and her hourly rate concerned Lynam's *discrimination* case and did not relate to any work she performed on Lynam's behalf on his retaliation claim.[16] Clearly, Lynam cannot support his claim of damages for the retaliation claim on the attorney's fees accrued while he was contesting the discrimination claim.

■■■ Lynam is correct in his assertion that a damage award to an injured plaintiff need not be specifically ascertainable. *See Rochez Bros., Inc. v. Rhoades,* 527 F.2d 891, 894 (3d Cir.1975), *cert. denied,* 425 U.S. 993, 96 S.Ct. 2205, 48 L.Ed.2d 817 (1976). However, damages cannot be based on sheer speculation, especially in the situation presented here where the jury was not required to assess future damages. *See Delahanty v. First Pa. Bank, N.A.,* 318 Pa.Super. 90, 464 A.2d 1243, 1257–58 (1983). Lynam had to introduce competent evidence concerning his actual monetary loss due to the retaliation, and this he failed to do.[17] The jury was left to arrive at a figure for damages without any basis on the record.

The Court may overturn a jury verdict in favor of a prevailing party only if the record "is critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief." *Danny Kresky Enterprises Corp. v. Magid,* 716 F.2d 206, 209 (3d Cir.1983). That is the case here. Even viewing the evidence in the light most favorable to Lynam, and affording him every fair and reasonable inference, *see Inventive Music Ltd. v. Cohen,* 617 F.2d 29, 31 (3d Cir.1980), the Court must conclude that the record in this case would not allow a reason-

able jury to find that he suffered any monetary damages due to Jackson & Coker's retaliation. The Court must therefore set aside the jury's award of monetary damages in the amount of $62,440. *See Rochez,* 527 F.2d at 894 ("Failure to put into evidence all the proof necessary for sustaining a judgment is generally fatal.").

■■■ The Court's inquiry, however, does not end by setting aside the damages awarded by the jury. The retaliation claim under the PHRA was tried to the jury, with the Court conforming its decision on the concomitant claim under Title VII to the jury's findings. *See Roebuck v. Drexel University,* 852 F.2d 715, 737–39 (3d Cir.1988). Setting aside the jury's verdict on the amount of damages does not impugn the validity of the jury's finding that there was, in fact, retaliation by Jackson & Coker against Lynam occasioned by his filing a claim with the PHRC.

■■■ Thus, in the wake of the Court's decision on the issue of damages, Lynam is left with a finding that he was retaliated against in violation of the law, but that he suffered no damages as a result. It is in this type of situation that a granting of nominal damages is appropriate. Nominal damages are a type of compensatory damage and are permissible in a claim under the PHRA, which allows for legal relief. *See* 43 P.S. § 962 (1993); *Welcker v. Smithkline Beckman,* 746 F.Supp. 576, 581 (E.D.Pa.1990); *see also Gallo v. John Powell Chevrolet, Inc.,* 779 F.Supp. 804, 814 (M.D.Pa.1991) ("The courts have considerable latitude in fashioning appropriate remedies for Title VII and PHRA violations."); *Mechensky v. Pennsyl-*

16. Ms. Hayes testified as follows:

> Q: ... How many hours did you bill to that case before you ceased representing Mr. Lynam?
>
> ....
>
> A: I've not gone back to check and I do not recall at this time.
>
> Q: Do you have any estimate at all?
>
> A: My guess would be 75 to 100 hours, but I am afraid I'm really guessing at this point. I've not gone back to check.
>
> Q: Okay, and at what rate was your time being billed out during that time?
>
> A: I believe I was billing at $175 an hour at that time.

Tr. of 2/3/1993 at 41–42. Taking the higher estimate of hours expended, one hundred, the testimony establishes attorney's fees of $17,500 expended by Lynam in pursuit of his *discrimination* claim. Since Ms. Hayes withdrew as counsel once Jackson & Coker engaged in its retaliatory activity, any fees earned by her could not have been as a result of the retaliatory activity.

17. As both parties agree, Lynam suffered no loss of unemployment benefits due to Jackson & Coker's actions in contesting the benefits. Thus, loss of unemployment benefits did not provide a basis for the damage award.

*vania Human Relations Comm'n,* 134 Pa. Cmwlth. 192, 578 A.2d 589, 596 (1990) (affirming the PHRC's granting of nominal damages for an employer's violation of a settlement agreement). As the Pennsylvania Supreme Court has stated, "[n]ominal damages represent the award of a trifling sum where there has been a breach of duty or infraction or invasion of a right, but no real, substantial or serious loss or injury has been established." *Stevenson v. Economy Bank of Ambridge,* 413 Pa. 442, 197 A.2d 721, 727 (1964). *Cf. Carey v. Piphus,* 435 U.S. 247, 266, 98 S.Ct. 1042, 1053, 55 L.Ed.2d 252 (1978) (approving grant of nominal damages for a violation of procedural due process); *United States ex rel. Tyrrell v. Speaker,* 535 F.2d 823, 829 (3d Cir.1976) (approving grant of nominal damages for a violation of 42 U.S.C. § 1983). In light of the jury's finding, the Court will award nominal damages in the amount of $1.00 on Lynam's claim of retaliation under the PHRA. *See Stevenson,* 197 A.2d at 728 ("[W]hen nominal damages are awarded in our courts, one dollar shall be the measure thereof.").

■ Lynam's claim under Title VII compels a different resolution than does the PHRA claim. Though there is support for the proposition that the award of nominal damages is permissible under Title VII, *see Croker v. Boeing Co. (Vertol Div.),* Civ. A. No. 71–2168, 1979 WL 116, at * 6 (E.D.Pa. Oct. 16, 1979), the better-reasoned position is that nominal damages, being a type of legal relief, are not recoverable under Title VII, pre–1991 Civil Rights Act. *See Landgraf v. USI Film Prods.,* 968 F.2d 427, 431 (5th Cir.1992) (rejecting the dicta in the Fifth Circuit's earlier opinion in *Joshi v. Florida State Univ.,* 646 F.2d 981, 991 n. 3 (5th Cir. Unit B 1981)), *cert. granted,* — U.S. —, 113 S.Ct. 1250, 122 L.Ed.2d 649 (1993) (certiorari granted on the issue of the retroactivity of the Civil Rights Act of 1991); *Bohen v. City of E. Chicago, Ind.,* 799 F.2d 1180, 1184 (7th Cir.1986); *Griffith v. Colorado,* 808 F.Supp. 763, 765–67 (D.Colo.1992); *Afanador v. United States Postal Serv.,* 787 F.Supp. 261, 269–74 (D.P.R.1991) (discussing the is-

sue extensively), *aff'd mem.,* 976 F.2d 724 (1st Cir.1992). Lynam, however, is entitled to a declaratory judgment, a type of equitable relief that is permissible under Title VII, *see Bibbs v. Block,* 778 F.2d 1318, 1323–24 (8th Cir.1985) (en banc); *LeBoeuf v. Ramsey,* 503 F.Supp. 747, 761 (D.Mass.1980), *rev'd on other grounds,* 677 F.2d 158 (1st Cir.1982), *cert. denied,* 464 U.S. 1017, 104 S.Ct. 547, 78 L.Ed.2d 722 (1983); *Cohen v. Gulfstream Aerospace Corp.,* Civ. A. No. 486–086, 1986 WL 9809, at *3 (S.D.Ga. June 27, 1986), and that was prayed for by Lynam in his complaint, *see* Pl.'s Complaint at 16, that Jackson & Coker did in fact retaliate against Lynam in violation of Title VII.

■ Jackson & Coker's second argument for a new trial is that the Court erred in charging the jury on the mixed-motive method of analyzing Lynam's retaliation claim.[18] *See Price Waterhouse,* 490 U.S. at 243–44, 109 S.Ct. at 1786–88. Specifically, Jackson & Coker argues that the evidence presented by Lynam concerning the retaliatory conduct by Jackson & Coker was insufficient to justify the instruction on mixed-motive that was given to the jury, relying on the Third Circuit's recent opinion in *Griffiths v. CIGNA Corp.* As the *Griffiths* court stated:

At a bare minimum, a plaintiff seeking to advance a mixed motive case will have to adduce circumstantial evidence "of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude."

*Griffiths,* 988 F.2d at 470 (quoting *Ostrowski,* 968 F.2d at 182). Jackson & Coker argues that the evidence presented by Lynam is of the type rejected by the Third Circuit in *Griffiths.* The Court disagrees. The evidence in the record goes beyond the single circumstance that failed in *Griffiths.* In the instant case, the record shows that Jackson & Coker committed *three* independent and substantial acts that support a finding that there was retaliation. First, Jackson & Coker correctly notes that the issue of the Ly-

---

**18.** Since the jury found against Lynam on his religious discrimination claim under both mixed-motive *and* pretext, Jackson & Coker argues that any error in charging mixed-motive as to that claim was "cured." *See* Def.'s Mem. of Law at 9 n. 9.

**1054**

nams' obligation under the promissory note was discussed before Lynam filed his complaint with the PHRC. *See* Tr. of 2/3/1993 at 14–15. However, the discussion of the note concerned Jackson & Coker's offer to extinguish the note in exchange for a release of claims. Only *after* the PHRC factfinding conference on April 16, 1991, did Jackson & Coker demand repayment on the note. *See* Tr. of 2/2/1993 at 6–8; Tr. of 2/3/1993 at 29–33.

Second, the demand for repayment in the letter of May 8, 1991, *see* Tr. of 2/3/1993 at 31–32, was followed shortly thereafter by the institution of a lawsuit for repayment of the note on August 8, 1991.

Finally, the unemployment benefits claimed by Lynam, which were initially *uncontested* by Jackson & Coker when Lynam applied for them on January 5, 1991, *see* Pl.'s ex. 61 (Notice of Determination from the Commonwealth of Pennsylvania, Department of Labor and Industry, indicating that employer did not respond to the inquiries of the employment security representative), were suddenly challenged on March 19, 1991, *see* Tr. of 2/1/1993 at 211, *after* Lynam had filed his complaint with the PHRC on January 16, 1991.

The three actions by the Company, taken together, occurring as they did shortly after Lynam filed his claim under the PHRA, and reflecting a substantive change in the Company's position in the wake of the filing of the PHRA claim by Lynam, are sufficient "circumstantial evidence 'of conduct . . . by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude.'" *Griffiths*, 988 F.2d at 470 (quoting *Ostrowski*, 968 F.2d at 182). Based on this evidence, the charge to the jury on the mixed-motive method of analysis was proper.

C. *Jackson & Coker's Motion for Relief from Judgment*

▇▇▇ Finally, Jackson & Coker has moved for relief from judgment. Under the Rules of Civil Procedure, the Court may relieve a party from a judgment for "any . . . reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b)(6). Jackson & Coker argues that the Third Circuit's opin-

ion in *Griffiths*, clarifying the different standards required for the mixed-motive and pretext theories, makes clear that the Court erred in charging both theories to the jury. *See* Def.'s Mot. for Relief from Judgment at 1.

▇▇▇ Relief under 60(b)(6) is "'available only in cases evidencing extraordinary circumstances,'" *Lasky v. Continental Prods. Corp.*, 804 F.2d 250, 256 (3d Cir.1986) (quoting *Stradley v. Cortez*, 518 F.2d 488, 493 (3d Cir.1975)), where "extreme" or "unexpected" hardship would result if the judgment is allowed to stand, *see Mayberry v. Maroney*, 558 F.2d 1159, 1163 (3d Cir.1977). The Court finds no extraordinary circumstances necessitating the setting aside of the judgment. The jury was properly instructed on mixed-motive, as discussed *supra*, and enforcement of the judgment would not result in an extreme or unexpected hardship.

III. CONCLUSION

For the foregoing reasons, the Court will deny the motion made by the Lynams, will grant judgment as a matter of law in favor of Jackson & Coker on the damage award, will enter a judgment of $1.00 in nominal damages, and will deny the motions made by Jackson & Coker for a new trial and relief from judgment.

An appropriate Order will be entered.

*ORDER*

AND NOW, this 30th day of December, 1993, for the reasons set forth in the accompanying Memorandum, it is hereby **ORDERED** that:

1. Jackson & Coker's Motion for Judgment as a Matter of Law (Docs. Nos. 61 & 64), is **GRANTED IN PART.** The damage award will be set aside. The motion for a new trial on the issue of retaliation is **DENIED;**

2. A.J. Lynam's Motion for Judgment as a Matter of Law (Doc. No. 62) is **DENIED;**

3. Jackson & Coker's Motion for Relief from Judgment (Doc. No. 68) is **DENIED;**

4. The Judgment previously entered in the this action (Doc. No. 63) is **VACATED.** The Court shall enter Judgment consistent with the jury's verdict and the accompanying Memorandum.

AND IT IS SO ORDERED.

### AMENDED JUDGMENT

AND NOW, this 30th day of December, 1993, upon a verdict returned by a jury pursuant to the answering of written interrogatories, and for the reasons stated in the Court's Memorandum, JUDGMENT is hereby entered as follows:

1. As to Civil Action 92–2311:

a. Judgment in the total amount of $1.00 is entered in favor of A.J. Lynam and against Jackson and Coker on Count IV of the complaint, relating to unlawful retaliation under the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.* ("PHRA"), as tried to the jury.

b. Judgment on Count II of the complaint, relating to unlawful retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), is entered in favor of A.J. Lynam and against Jackson & Coker, the Court having conformed the jury's verdict on Count IV to reach its conclusion as to Count II, *see Roebuck v. Drexel University,* 852 F.2d 715 (3d Cir.1988). Jackson & Coker is declared to have retaliated against A.J. Lynam for his filing of a complaint with the Pennsylvania Human Relations Commission.

c. Judgment is entered in favor of Jackson and Coker and against A.J. Lynam on Count III of the complaint, relating to religious discrimination under the PHRA, as tried to the jury, and Count I of the complaint, relating to religious discrimination under Title VII, the Court having conformed the jury's verdict on Count III to reach its conclusion as to Count I. *See Roebuck, supra.*

2. As to Civil Action 91–5127:

a. Judgment is entered in favor of A.J. and Connie Lynam and against Jackson and Coker on the claim raised in the complaint relating to A.J. and Connie Lynam's return of funds loaned to them by Jackson and Coker. It is further ordered that A.J. and Connie Lynam shall not be responsible for the payment of interest at the time that the loan becomes due; and

b. Judgment is entered in favor of Jackson and Coker and against A.J. Lynam on Count V of the counterclaim, relating to Jackson and Coker's payment of A.J. and Connie Lynam's mortgage payments.