Maribel **VALENTIN**

v.

**CROZER–CHESTER MEDICAL CENTER.**

No. CIV. A. 95–3722.

United States District Court, E.D. Pennsylvania.

Nov. 3, 1997.

Shelly Farber, Media, PA, for Plaintiff.

Judith E. Harris, Lynn Collins, Morgan, Lewis and Bockius, Philadelphia, PA, for Defendant.

### MEMORANDUM and ORDER

SHAPIRO, District Judge.

Plaintiff Maribel Valentin ("Valentin") filed this action against defendant Crozer–Chester Medical Center ("Crozer"); she alleged unlawful national origin discrimination and retaliation because she filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"), pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq.* A jury returned a verdict in favor of Valentin and against Crozer on both the discrimination and retaliation claims. Crozer filed a renewed motion for judgment as a matter of law or for a new trial. For the reasons stated below, Crozer's motions will be granted in part and denied in part.

### FACTS

Crozer is a medical facility located in Upland, Pennsylvania. Valentin began working at Crozer as a supervisor in September, 1990. Faye DeMuth ("DeMuth") was hired by Crozer in November, 1990, and served as Valentin's supervisor for all periods of time relevant to this litigation.

Valentin was promoted to the position of evening/night coordinator in January, 1992. In this position Valentin was responsible for supervising approximately thirty employees. On August 19, 1993, Crozer eliminated the position of evening/night coordinator. Valentin inquired of Nancy Bristol ("Bristol"), laboratory administrative manager, as to any evening shift openings; Bristol told her there were none. Valentin became a weekend supervisor.

Valentin believed the decision to eliminate her position as evening/night coordinator was based on her Puerto Rican background. On September 22, 1993, she filed an EEOC complaint alleging discrimination based on national origin.

On October 25, 1993, DeMuth and Collette Brown ("Brown"), the senior human resources manager, promoted Joanne Ullman ("Ullman") from general technologist to senior technologist in the laboratory blood bank. Valentin had not interviewed for the senior technologist position.[1] DeMuth told Valentin to report to Ullman when she worked the second shift one day per week; Valentin objected on the ground that Ullman was a recent graduate who lacked sufficient experience.

Valentin filed a second charge with the EEOC on November 2, 1993. Valentin alleged Crozer subjected her to unfair treatment, in retaliation for having filed her original EEOC charge. In particular, Valentin

---

1. Bristol apparently informed Valentin that hospital regulations precluded her bidding out of her weekend supervisor position to another hospital position within one year of accepting a transfer.

complained of DeMuth's instruction to report to Ullman when she worked the second shift. Valentin also claimed DeMuth informed her on October 28, 1993, following Valentin's absence from work due to illness, that according to the hospital sick-leave policy, she would receive a warning if she were again absent from work within the following six months.

Valentin also alleged she was subjected to increased scrutiny in the laboratory after filing her original EEOC complaint. Valentin incorrectly reported the results of a test she performed on synovial fluid in October, 1993. The physician who ordered the test believed Valentin's results were incorrect; William Blakeslee ("Blakeslee") and Loreen Jennings ("Jennings") did a recount on the synovial fluid, and determined that Valentin's analysis was incorrect. Valentin received a written disciplinary report for the incorrect laboratory analysis.

In December, 1993, DeMuth evaluated Valentin for the period from September, 1992, to December, 1993. DeMuth rated Valentin "satisfactory." Valentin objected to this evaluation and prosecuted a grievance. Valentin discussed her evaluation with: Melvin Einhorn ("Einhorn"), vice president of human resources; Joseph Saunders ("Saunders"), vice president for support services; DeMuth; and Bristol. Einhorn instructed the laboratory managers to remove a paragraph from Valentin's evaluation, but no one did so.

On January 10, 1995, Valentin and various Crozer officials participated in a fact-finding conference with the EEOC; the EEOC took no dispositive action regarding Valentin's two outstanding charges. Crozer terminated Valentin in February, 1995. Crozer relied on three justifications for firing Valentin: 1) Valentin divulged confidential information regarding the termination of Pat Smith ("Smith"), contrary to hospital policy; 2) Valentin behaved in a rude manner toward a member of the Crozer medical staff; and 3) Valentin suggested to subordinate employees they should not report laboratory errors.

At the time of Valentin's termination, she was earning $28 per hour at Crozer. Valentin was hired by the hematology department at Brookside Lab four months later on June 14, 1995. After receiving several raises, Valentin was earning $19 per hour at Brookside Lab at the time of trial.

At the close of Valentin's case, Crozer moved for judgment as a matter of law; the court took Crozer's motion under advisement. Crozer again moved for judgment as a matter of law at the close of all the evidence; the court denied the motion.

The jury returned a verdict in favor of Crozer and against Valentin on her claim that Crozer had eliminated Valentin's position of evening/night coordinator because of her national origin; the jury returned a verdict in favor of Valentin and against Crozer on the claim that Crozer terminated Valentin because of her national origin. On Valentin's retaliation claims, the jury returned a verdict in favor of Valentin and against Crozer on the claim that Crozer retaliated against Valentin between September, 1993 and February, 1995, because of her EEOC complaints; the jury returned a verdict in favor of Valentin and against Crozer on the claim that Crozer terminated Valentin in February, 1995 because of her EEOC complaints.

The jury awarded Valentin damages of $209,000 for pain and suffering, $45,400 for past lost wages and $20,600 for future lost wages. The court reduced the $20,600 award to present value of $19,757.92, and entered judgment against Crozer in the amount of $274,157.92. Crozer filed a renewed motion for judgment as a matter of law or for a new trial.

## DISCUSSION

### I. Standard of Review for Post–Trial Motions

#### A. Judgment as a Matter of Law

Upon renewed motion for judgment as a matter of law, the Federal Rules of Civil Procedure permit the court to: "(A) allow the judgment to stand, (B) order a new trial, or (C) direct entry of judgment as a matter of law." Fed.R.Civ.P. 50(b)(1).[2]

2. The Rule provides in relevant part:
 If for any reason the court does not grant a motion for judgment as a matter of law made

at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the

■ Judgment as a matter of law may be granted only if "there is no legally sufficient evidentiary basis for a reasonable jury" to find in favor of the non-moving party. Fed. R.Civ.P. 50(a). " 'The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find for that party.' " *Walter v. Holiday Inns, Inc.,* 985 F.2d 1232, 1238 (3d Cir.1993) (quoting *Patzig v. O'Neil,* 577 F.2d 841, 846 (3d Cir.1978)).

■ The court must view the evidence in the light most favorable to the non-moving party, and " 'every fair and reasonable inference' " must be drawn in that party's favor. *McDaniels v. Flick,* 59 F.3d 446, 453 (3d Cir.1995) (quoting *Lightning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153, 1166 (3d Cir.1993)), *cert. denied,* 516 U.S. 1146, 116 S.Ct. 1017, 134 L.Ed.2d 97 (1996); *see Keith v. Truck Stops Corp.,* 909 F.2d 743, 745 (3d Cir.1990). "A jury verdict can be displaced by judgment as a matter of law only if 'the record is critically deficient of the minimum quantum of evidence from which the jury might reasonably afford relief.' " *Stelwagon Manu. Co. v. Tarmac Roofing Sys., Inc.,* 862 F.Supp. 1361, 1364 (E.D.Pa.1994) (quoting *Dawson v. Chrysler Corp.,* 630 F.2d 950, 959 (3d Cir.1980), *cert. denied,* 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981)), modified, 63 F.3d 1267 (3d Cir.1995), *cert. denied,* 516 U.S. 1172, 116 S.Ct. 1264, 134 L.Ed.2d 212 (1996); *see Parkway Garage Inc. v. City of Phila.,* 5 F.3d 685, 691 (3d Cir.1993) (citations omitted).

Crozer moves for judgment as a matter of law on the ground that Valentin failed to carry her burden of establishing by a preponderance of the evidence that Crozer terminated her based on her national origin or retaliated against her because of her EEOC activity.

legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment—and may alternatively request a new trial or join a motion for a new trial under Rule 59.

## B. Motion for a New Trial

■ A court can grant a new trial "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R.Civ.P. 59(a)(1). A new trial may be granted where "the verdict is contrary to the great weight of the evidence." *Roebuck v. Drexel Univ.,* 852 F.2d 715, 735 (3d Cir.1988). A new trial also is appropriate if the trial court erred on a matter of law. *See Klein v. Hollings,* 992 F.2d 1285, 1289–90 (3d Cir. 1993).

■ The decision to grant or deny a motion for a new trial "is confided almost entirely to the discretion of the district court." *Blancha v. Raymark Indus.,* 972 F.2d 507, 512 (3d Cir.1992); *see Allied Chem. Corp. v. Daiflon, Inc.,* 449 U.S. 33, 36, 101 S.Ct. 188, 190–91, 66 L.Ed.2d 193 (1980). However, the court's discretion is more limited when granting a new trial because the jury's verdict is against the weight of the evidence. *See Hourston v. Harvlan, Inc.,* 457 F.2d 1105, 1107 (3d Cir.1972); *Lind v. Schenley Indus., Inc.,* 278 F.2d 79, 90 (3d Cir.1960), *cert. denied,* 364 U.S. 835, 81 S.Ct. 58, 5 L.Ed.2d 60 (1960). A new trial "cannot be granted ... merely because the court would have weighed the evidence differently and reached a different conclusion." *Markovich v. Bell Helicopter Textron, Inc.,* 805 F.Supp. 1231, 1235 (E.D.Pa.) *aff'd,* 977 F.2d 568 (3d Cir.1992).

■ A court analyzing a motion for a new trial need not view the evidence in the light most favorable to the verdict winner. *See Magee v. General Motors Corp.,* 213 F.2d 899, 900 (3d Cir.1954). If the court finds the verdict is against the great weight of the evidence, or the amount of the verdict is excessive and "shocks the conscience" of the court, the court may grant a new trial. *See Williamson v. Consolidated Rail Corp.,* 926

In ruling on a renewed motion, the court may: (1) if a verdict was returned: (A) allow the judgment to stand, (B) order a new trial, or (C) direct entry of judgment as a matter of law.... Fed.R.Civ.P. 50(b)(1).

F.2d 1344, 1353 (3d Cir.1991); *New Market Inv. Corp. v. Fireman's Fund Ins. Co.*, 774 F.Supp. 909, 917 (E.D.Pa.1991).

Crozer moves for a new trial based on the following grounds: 1) the jury's verdict against Crozer on the discrimination and retaliation claims was against the great weight of the evidence; 2) the award of compensatory damages was excessive and should "shock the conscience" of the court; and 3) the court erred in omitting language from the special interrogatory sheet submitted to the jury.

## II. Discrimination Based on National Origin

### A. Similarly Situated Employees

■ Valentin claimed Crozer terminated her because of her national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*[3] The plaintiff has the burden of establishing by a preponderance of the evidence that she was a member of a protected class, was qualified for the job and was discharged while other employees not in her class were retained.[4] *See, e.g., Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir.1989), *cert. denied*, 493 U.S. 1023, 110 S.Ct. 725, 107 L.Ed.2d 745 (1990).

■ Crozer bases its motion for judgment as a matter of law or a new trial on the third prong of the Title VII test: whether Valentin established at trial there were other similarly situated employees not in her protected class who were treated more favorably.

Crozer correctly argues that in a Title VII intentional discrimination action, the plaintiff has the burden to prove there were similarly situated employees treated differently. *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 258, 101 S.Ct. 1089, 1096, 67 L.Ed.2d 207 (1981); *see Jalil*, 873 F.2d at 708; *Easley v. West*, No. 93–6751, 1994 WL 702904, at *9 (E.D.Pa. Dec.13, 1994); *Denofa*

*v. W.W. Grainger, Inc.*, No. 91–5823, 1992 WL 212350, at *3 (E.D.Pa. Aug.26, 1992).

At trial, Crozer offered three non-discriminatory reasons for terminating the plaintiff. First, Crozer relied on Valentin's improper disclosure of the facts surrounding Smith's termination. DeMuth testified disclosure of such confidential information was unacceptable for any Crozer employees. *See* N.T. (10/28/96) at 33. Valentin's own witness, Celeste Woodsmall ("Woodsmall"), testified Valentin told her explicit details about Smith's termination. *See* N.T. (10/25/96) at 41–43.

Valentin offered evidence that several other non-Hispanic Crozer employees discussed the Smith termination; none of these employees were fired: Karen Stull ("Stull") and Ullman, *see* N.T. (10/28/96) at 135–36, N.T. (10/30/96) at 98–99; Vanessa Solen ("Solen") and Barbara Bowman ("Bowman"), *see* N.T. (10/24/96) at 189, N.T. (10/25/96) at 44; Cindy Hineman ("Hineman"), *see* N.T. (10/25/96) at 7; Cane Johnson ("Johnson"), *see* N.T. (10/28/96) at 31; and Mama Kelly ("Kelly"), *see* N.T. (10/30/96) at 30, 136.

DeMuth admitted all Crozer employees were bound by the nondisclosure regulation, *see* N.T. (10/28/96) at 33, but Crozer presented evidence that none of these employees discussed Smith's termination in the same manner as Valentin. Solen overheard Valentin discussing the details of Smith's firing and simply expressed her concern to Bowman that such conversations were taking place. *See* N.T. (10/30/96) at 75–76. Bowman related this information to her supervisor, Hineman, who then informed DeMuth. *See id.* at 74. These employees were not gossiping about Smith's termination, but were reporting Valentin's indiscretion to their superiors.

Crozer presented evidence that Stull only talked of Smith's termination to Valentin herself, after Valentin approached her; Stull discussed the matter with Valentin because Valentin was a supervisor and Stull had in-

---

**3.** Title VII provides: "It shall be an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...." 42 U.S.C. § 2000e–2(a)(1).

**4.** As a Puerto Rican, Valentin belonged to a protected class, and Valentin previously had qualified for the job.

formation "received directly from [Smith]." N.T. (10/24/96) at 167–68.

DeMuth conducted an investigation into whether Stull and Ullman had a conversation about the details of Smith's termination; DeMuth concluded no such conversation took place. *See* N.T. (10/30/96) at 69. DeMuth investigated Johnson's alleged discussion about Smith and determined her discussion focused on "where Pat Smith had gone in general because she was literally there one day and not the next." *Id.* at 67.

Crozer's second reason for terminating Valentin centered on her alleged rudeness to Dr. Skobeloff, a member of Crozer's medical staff. See N.T. (10/28/96) at 166. There was evidence that Dr. Skobeloff's real concern was not Valentin's rudeness but the timeliness of her services. *See* N.T. (10/28/96) at 144. There was no evidence of typical discipline for other rude employees. The jury could have concluded Valentin was treated unfairly because of conflicting evidence about Dr. Skobeloff's real concerns.

Crozer's third justification for firing Valentin was that she encouraged other employees not to report laboratory errors. Valentin admitted the importance of accurate clinical reporting in the laboratory. *See* N.T. (10/22/96) at 151. Solen and Strass testified Valentin discouraged employees from reporting clinical errors; Valentin did not believe an employee should be fired for laboratory mistakes. *See* N.T. (10/24/96) at 176, 192, 194–97; N.T. (10/25/96) at 18–19.

Valentin offered no evidence that similarly situated employees, Hispanic or otherwise, were treated differently when encouraging others not to report laboratory mistakes. Valentin testified she knew of no other managers or supervisors who had not reported clinical errors; she did not know of any managers or supervisors who concealed laboratory errors made by other employees; she did not know of any managers or supervisors who had discouraged employees from reporting errors. *See* N.T. (10/24/96) at 69–70.

Crozer presented evidence it had terminated a Crozer evening/night supervisor named Christine Russell ("Russell"), a white employee, for failure to report a laboratory error. See N.T. (10/28/96) at 128–32. Valentin was then obliged to show Russell was not similarly situated or was treated more favorably. *See Easley,* 1994 WL 702904, at *9; Denofa, 1992 WL 212350, at *3.

Russell was not treated more favorably, as they both were fired. Valentin contended Russell was not similarly situated. Russell was terminated for failing to report a clinical error. Valentin allegedly was fired for encouraging others not to report laboratory errors. Whether such a distinction is dissimilarity under Title VII analysis was a jury question. The jury concluded Valentin was not similarly situated to Russell, so Russell's termination was not relevant to Crozer's treatment of Valentin.

### B. Pretext

■ Once Valentin showed she was similarly situated to other employees who were treated more favorably and her employer offered legitimate, non-discriminatory reasons for terminating her, she had to prove those reasons were a mere pretext for discriminating against her. *See Gomez v. Allegheny Health Servs., Inc.,* 71 F.3d 1079, 1083 (3d Cir.1995), *cert. denied,* 518 U.S. 1005, 116 S.Ct. 2524, 135 L.Ed.2d 1049 (1996); *Roebuck v. Drexel Univ.,* 852 F.2d 715, 726–27 (3d Cir.1988). The plaintiff's " 'ultimate burden of persuasion includes the requirement to show that the defendant's proffered reason is a pretext for discrimination, i.e., that the proffered reason is merely a fabricated justification for discriminatory conduct.' " *Gunby v. Pennsylvania Elec. Co.,* 840 F.2d 1108, 1116 (3d Cir.1988) (quoting *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 898 (3d Cir.1987) (en banc)), *cert. denied,* 492 U.S. 905, 109 S.Ct. 3213, 106 L.Ed.2d 564 (1989).

■ Once an employer offers legitimate reasons for the plaintiff's termination, "any presumption of discrimination drops from the case, and the plaintiff then must satisfy the ultimate burden of proving discrimination 'by showing that the employer's proffered explanation is unworthy of credence.' " *Griffiths v. CIGNA Corp.,* 988 F.2d 457, 469 (3d Cir.) (quoting *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095), *cert. denied,* 510

U.S. 865, 114 S.Ct. 186, 126 L.Ed.2d 145 (1993).[5]

 The plaintiff can prove pretext directly or indirectly. Indirect evidence "must be enough to support a *reasonable* inference that the reasons given for the employment decision are pretextual." *Billet v. CIGNA Corp.,* 940 F.2d 812, 816 (3d Cir. 1991); *see Sheridan,* 100 F.3d at 1069. "Merely reciting that [national origin] was the reason for the decision does not make it so." *Billet,* 940 F.2d at 816 (citing *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985)).

DeMuth stated in November, 1992, "It's a shame we can't hire them all white," while reviewing job applications, and said in June or July, 1993, she would not contact a particular applicant because she might have been Filipino. N.T. (10/24/96) at 23–24. These statements did not relate to Valentin, but either DeMuth or Bristol commented in November, 1992, about Valentin's pronunciation of the word "shopping." *See id.* at 24.

 Stray remarks by supervisors that are unrelated to the employment decision process should not be considered in a Title VII pretext case. *See Fuentes v. Perskie,* 32 F.3d 759, 767 (3d Cir.1994); *Ezold v. Wolf, Block, Schorr & Solis–Cohen,* 983 F.2d 509, 545 (3d Cir.1992), cert. *denied,* 510 U.S. 826, 114 S.Ct. 88, 126 L.Ed.2d 56 (1993). DeMuth's comment about the Filipino applicant was made almost two years before Valentin's termination; the length of time between the comment and Valentin's termination makes it inapplicable to the latter decision. *See Ezold,* 983 F.2d at 545. A supervisor's comment on her pronunciation of "shopping," more than two years before her termination, does not establish that Crozer's legitimate reasons for firing her were mere pretext. *See Fuentes,* 32 F.3d at 767 (supervisor's inability or unwillingness to call Puerto Rican employee by his first name because he could not pronounce it was not evidence of national origin discrimination)

 A Crozer employee, Sue Crandley ("Crandley"), made fun of Valentin's accent. See N.T. (10/24/96) at 24. Crandley was a technician, not a supervisor or manager. *See id.* Stray remarks by non-supervisors "are inadequate to support an inference of discrimination by the employer." Gomez, 71 F.3d at 1085 (citing *Armbruster v. Unisys Corp.,* 32 F.3d 768, 779 (3d Cir.1994); *Fuentes,* 32 F.3d at 767; Ezold, 983 F.2d at 545). Crandley had no supervisory power over Valentin; her comments cannot be attributed to Crozer and cannot support Valentin's claim of national origin discrimination by Crozer.

 "The district court must determine whether the plaintiff has cast sufficient doubt upon the employer's proffered reasons to permit a reasonable fact finder to conclude that the reasons are incredible. . . . ." *Sheridan,* 100 F.3d at 1072. "[T]he non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder *could* rationally find them 'unworthy of credence. . . .' " (*Fuentes,* 32 F.3d at 764–65 (quoting *Ezold,* 983 F.2d at 531)).

The jury, crediting all evidence of Valentin and drawing all inferences in her favor, could reasonably have concluded Valentin was similarly situated to other employees and treated less favorably. However, Valentin also had the burden of proving Crozer terminated her because of her national origin as opposed to any other arbitrary motive. The only evidence Valentin offered related to her national origin involved stray remarks by supervisors and co-workers; that evidence cannot support a finding of national origin discrimination. The court finds that "the record lacks substantial evidence in support of plaintiff's contention that but for unlawful discrimination [she] would not have been discharged." *Gomez,* 71 F.3d at 1083; *see Billet,* 940 F.2d

---

5. The plaintiff can rely on evidence used to establish her prima facie case when refuting the defendant's legitimate reason for her termination. *See Burdine,* 450 U.S. at 255 n. 10, 101 S.Ct. at

1095 n. 10; *Sheridan v. E.I. DuPont de Nemours & Co.,* 100 F.3d 1061, 1069 (3d Cir.1996) (en banc), cert. *denied,* —— U.S. ——, 117 S.Ct. 2532, 138 L.Ed.2d 1031 (1997).

at 815. Accordingly, judgment as a matter of law will be entered in favor of Crozer on Valentin's discriminatory discharge claim.

■ Crozer has moved for a new trial in the alternative. Crozer argues there was an error on the interrogatory sheet submitted to the jury. The jury was asked whether Valentin proved by a preponderance of the evidence that her national origin was a "motivating factor" in Crozer's decision to terminate her. There was no inquiry whether Crozer would have made the same decision were it not for the unlawful discrimination.

Under the Civil Rights Act of 1991, a plaintiff is not entitled to damages unless the jury concludes the defendant would not have terminated the plaintiff absent the unlawful discriminatory motive. *See* 42 U.S.C. § 2000e–5(g)(2)(B).[6] It was error not to include that question on the verdict sheet. *See Sheppard v. Riverview Nursing Ctr., Inc.*, 88 F.3d 1332, 1334 (4th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 483, 136 L.Ed.2d 377 (1996).

■ Normally a party is prohibited from objecting to jury instructions or interrogatories in a post-trial motion when it did not object at trial. *See* Fed.R.Civ.P. 51; *Neely v. Club Med Management Servs., Inc.*, 63 F.3d 166, 200 (3d Cir.1995) (en banc); *Grace v. Mauser–Werke Gmbh*, 700 F.Supp. 1383, 1388–89 (E.D.Pa.1988). Crozer argues the error was plain or fundamental, so the objection can be considered in a post-trial motion. *See Walters v. Mintec/Int'l*, 758 F.2d 73, 76 (3d Cir.1985); *Jackson & Coker, Inc. v. Lynam*, 840 F.Supp. 1040, 1048 (E.D.Pa.1993),

*aff'd,* 31 F.3d 1172 (1994). The court presented the proposed jury interrogatories to both parties before publishing them to the jury. Crozer not only failed to object, but affirmatively approved them. The court deems this objection waived.

■ Crozer also argues for a new trial because the jury's verdict of liability against Crozer on Valentin's national origin discrimination claim was "against the great weight of the evidence." *See Williamson*, 926 F.2d at 1353; *New Market Inv. Corp.*, 774 F.Supp. at 917. The court agrees and would grant a new trial if Crozer is not entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 50(c)(1).[7]

## III. Retaliation

■ Valentin claimed Crozer retaliated against her after she filed her initial charge with the EEOC in September, 1993. To establish discriminatory retaliation under Title VII, Valentin must have established that: 1) she engaged in activity protected under Title VII;[8] 2) her employer took an adverse employment action against her; and 3) there was a causal connection between her participation in the protected activity and the adverse employment action. *See Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1299 (3d Cir.1997); *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 299, 139 L.Ed.2d 230 (1997); *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir.1995); *Griffiths*, 988 F.2d at 468.

■ An employer's conduct will qualify as an "adverse employment action" "only if it

---

**6.** The statute states the following:

> On a claim in which an individual proves a violation under section 2000e–2(m) of this title and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court—
>
> (i) may grant declaratory relief, injunctive relief (except as provided in clause (ii)), and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 2000e–2(m) of this title; and
>
> (ii) shall not award damages or issue an order requiring any admission, reinstatement hiring, promotion, or payment, described in subparagraph (A).

42 U.S.C. § 2000e–5(g)(2)(B).

**7.** The Rule provides in relevant part:

> If the renewed motion for judgment as a matter of law is granted, the court shall also rule on the motion for a new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed, and shall specify the grounds for granting or denying the motion for the new trial.

Fed.R.Civ.P. 50(c)(1). A new trial may be appropriate even where judgment as a matter of law is not. *See Sheridan*, 100 F.3d at 1076; *Roebuck*, 852 F.2d at 735.

**8.** Valentin's filing of a charge with the EEOC was "protected activity."

alters the employee's 'compensation, terms, conditions, or privileges of employment,' deprives him or her of employment opportunities,' or 'adversely affect[s] his [or her] status as an employee.'" *Robinson,* 120 F.3d at 1300 (quoting *Smart v. Ball State Univ.,* 89 F.3d 437, 441 (7th Cir.1996)).

■ The jury concluded Crozer had retaliated against Valentin in the conditions of her employment between September, 1993 and February, 1995 and her termination in February, 1995 was retaliatory. Valentin pointed to several actions by Crozer officials during the period from September, 1993 to February, 1995 in support of her claims. First, Valentin argued DeMuth informed her on October 28, 1993, she would receive a written warning if she were absent from work within the next six months, pursuant to hospital sick-leave policy. *See* N.T. (10/24/96) at 33. Valentin did not receive a written warning for being absent; DeMuth simply informed Valentin she would receive a warning if she were absent again.

■ An employer's decision to advise an employee about the company's sick-leave policy, without more, does not amount to an "adverse employment action" for which Title VII provides a remedy. "'[N]ot everything that makes an employee unhappy' qualifies as retaliation, for '[o]therwise, minor and even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit.'" *Robinson,* 120 F.3d at 1300 (quoting *Smart,* 89 F.3d at 441 (internal citation omitted)).

Crozer staff increased the frequency of commendation and inquiry reports ("CIRs") and inspections of laboratory work after Valentin filed her first EEOC charge. *See* N.T. (10/24/96) at 34. Valentin did not know whether the hospital increased the frequency of incident reports overall in the laboratory. *See id.* Bristol testified there was a total increase in the number of CIRs; twice as many inquiries were made of everyone working in the laboratory. *See* N.T. (10/28/96) at 137. If every laboratory employees' work was being examined, this would not support a claim of retaliation for filing a charge with the EEOC.

■ Crozer disciplined Valentin in September, 1994, for incorrectly analyzing a sample of synovial fluid. *See* N.T. (10/24/96) at 64–67. The requesting physician believed Valentin's analysis was wrong. Valentin admitted sending the sample she analyzed to the microbiology section of the laboratory; two other employees in that section performed a new analysis on the sample sent to them, and verified that Valentin's analysis was incorrect. *See* N.T. (10/29/97) at 144–47. Valentin received a verbal warning for the error and she claimed this was done in retaliation for her EEOC activity.

■ Crozer presented a legitimate reason to discipline Valentin: her erroneous analysis of the synovial fluid. Even if Valentin correctly analyzed the fluid sample, "'unsubstantiated oral reprimands' and 'unnecessary derogatory comments' following her complaint do not rise to the level of 'adverse employment action' required for a retaliation claim." *Robinson,* 120 F.3d at 1301 (quoting *Wanamaker v. Columbian Rope Co.,* 108 F.3d 462, 465–66 (2d Cir.1997)). Crozer's disciplining Valentin for an inaccurate laboratory analysis is not retaliation under Title VII.

The Crozer officials who allegedly retaliated against Valentin selected her for Zenger–Miller training during this time. *See* N.T. (10/24/96) at 36–38; N.T. (10/28/96) at 133–34; N.T. (10/29/96) at 45–46. After her training, Valentin provided Zenger–Miller training to other laboratory personnel. DeMuth nominated Valentin for this program and Bristol and Saunders approved Valentin's attendance. *See* N.T. (10/28/96) at 133–34; N.T. (10/29/96) at 44–46. Even though the classes took place during the daytime, Valentin was paid for her time in the Zenger–Miller classes at her evening pay rate rather than at the lower daytime pay rate; Valentin earned an additional $2,500 for her participation in the program. *See* N.T. (10/28/96) at 133–34; N.T. (10/29/96) at 46.

The acts Valentin pointed to as retaliation between September, 1993, and February, 1995, were not serious enough to have changed the terms and conditions of her

employment. *See Robinson,* 120 F.3d at 1301. Crozer simultaneously rewarded Valentin by providing her with advanced training and increased compensation during the period she claimed retaliation. The court will enter judgment as a matter of law in favor of Crozer on Valentin's claim for retaliation between September, 1993 and February, 1995.

▪ Valentin argued her termination in February, 1995, was Crozer's final act of retaliation. Her termination occurred more than fifteen months after she filed her second EEOC charge but shortly after she and Crozer officials participated in an EEOC fact-finding conference on January 10, 1995. *See* N.T. (10/22/96) at 139–40. Valentin testified she complained about Crozer during the conference, and Crozer terminated her as a result.

▪ "[T]he mere fact that adverse employment action occurs after a complaint will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events." *Robinson,* 120 F.3d at 1302; *see Delli Santi v. CNA Ins. Co.,* 88 F.3d 192, 199 n. 10 (3d Cir.1996). The timing of her termination alone does not raise an inference of retaliation, but DeMuth, Bristol and Brown were present at the EEOC conference in January, 1995, and they heard Valentin discuss her reasons for alleging discrimination and retaliation. The jury reasonably could have considered the proximity of the January EEOC conference to Valentin's termination five weeks later by those present at the conference as evidence of a causal link between Valentin's protected activity and her termination. *See Coates v. Dalton,* 927 F.Supp. 169, 171 n. 1 (E.D.Pa. 1996).

The alleged retaliatory acts taken by Crozer against Valentin between September, 1993, and February, 1995, were not severe enough to qualify as "adverse employment action" under Title VII. *See Robinson,* 120 F.3d at 1300–01. The record "is critically deficient of the minimum quantum of evidence from which the jury might reasonably afford relief." *Dawson,* 630 F.2d at 959.

The court will grant judgment as a matter of law in favor of Crozer on Valentin's claim of retaliation between September, 1993, and February, 1995.

However, Valentin did present evidence that her termination was causally related to her participation in the EEOC process. Drawing all inferences in her favor, Crozer's motion for judgment as a matter of law on Valentin's retaliatory discharge claim will be denied. The jury's verdict on liability as to this claim was not against the weight of the evidence.

## IV. Excessive Verdict

The jury awarded Valentin $45,000 in past lost wages and $20,600 in future lost wages. The jury also awarded Valentin $209,000 in compensatory damages for pain and suffering incurred during her time out of work.

▪ Crozer moves for a new trial on the ground that the jury's award of $209,000 in compensatory damages for pain and suffering was against the weight of the evidence.[9] Generally, a fact finder is not permitted to infer emotional distress. *See Gunby,* 840 F.2d at 1121–22 (speculative compensatory damages will not be awarded; plaintiff must present evidence of emotional distress)

Valentin testified to the emotional pain she suffered as a result of being terminated by Crozer. *See* N.T. (10/22/96) at 168–71. The Court of Appeals has not decided whether the plaintiff's testimony alone can support an award of emotional damages. *See Doe v. SEPTA,* 72 F.3d 1133, 1143 (3d Cir.1995) (recognizing unresolved issue). Other appellate courts' decisions are in conflict. *See, e.g., Chalmers v. City of L.A.,* 762 F.2d 753, 761 (9th Cir.1985) (plaintiff's testimony enough); *Williams v. Trans World Airlines, Inc.,* 660 F.2d 1267, 1272–73 (8th Cir.1981) (same). But *see Cohen v. Board of Ed.,* 728 F.2d 160, 162–63 (2d Cir.1984) (plaintiff's testimony not enough); *Nekolny v. Painter,* 653 F.2d 1164, 1172 (7th Cir.1981) (same), *cert. denied,* 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 139 (1982).

---

**9.** Crozer does not challenge the jury's award of past or future lost wages.

When the plaintiff's testimony is the only evidence of her emotional distress and she has not introduced evidence of physical damage or the need for professional care, there must be " 'reasonable probability, rather than a mere possibility, that damages due to emotional distress were in fact incurred as a result' " of the unlawful act. *Spence v. Board of Ed.,* 806 F.2d 1198, 1201 (3d Cir. 1986); *see Rush v. Scott Specialty Gases, Inc.,* 930 F.Supp. 194, 199 (E.D.Pa.1996), *rev'd in part,* 113 F.3d 476 (3d Cir.1997).

Valentin's testimony was sufficient to justify some damages for pain and suffering, but the issue is whether Valentin's testimony was sufficient, without additional evidence, to support an award of $209,000. The court must determine whether the jury had "a reasonable basis" for awarding that amount. *Bolden v. SEPTA,* 21 F.3d 29, 32 n. 1 (3d Cir.1994).

Valentin did not offer any evidence other than her own testimony that she was "depressed" and upset by her termination. See N.T. (10/22/96) at 168–69. "It was very humiliating" for Valentin to have to explain the circumstances of her termination to future employers. *See* N.T. (10/24/96) at 8–10. The undisputed evidence was that Valentin functioned well enough to obtain a suitable position a few months after her termination.

The $209,000 emotional damage award was grossly excessive. Valentin presented no evidence that could have allowed the jury reasonably to arrive at that figure for retaliatory termination alone. When the only evidence presented in support of an award of compensatory damages is the plaintiff's "thin evidence of rather limited damages," the plaintiff can only recover "a minimal award for intangible injuries." *Hetzel v. County of Prince William,* 89 F.3d 169, 171 (4th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 584, 136 L.Ed.2d 514 (1996).

In these circumstances, an award of compensatory damages in the amount of $209,000 shocks the conscience of the court. See *Keenan,* 983 F.2d at 469. The excessive size of the emotional distress award is unfairly prejudicial to Crozer and indicates the jury's verdict on liability may have been based on unguided passion or the alleged national origin discrimination. *See Williamson v. Consolidated Rail Corp.,* 926 F.2d 1344, 1353 (3d Cir.1991). Judgment as a matter of law has been granted on claims that may well have improperly influenced the damage award.

To avoid the necessity of a new trial, a remittitur is an appropriate remedy. Therefore, the court will conditionally grant a new trial unless the plaintiff accepts a judgment in the amount of $117,407.92 ($45,000 in past lost wages, plus $19,757.92 in future lost wages, plus $52,250, one-fourth of the $209,-000 emotional damage award).

In the event the court's grant of judgment as a matter of law in favor of Crozer on the discrimination claims and the retaliation claim based on Crozer's activity between September, 1993, and February, 1995, is reversed, the court conditionally grants Crozer's motion for a new trial. *See* Fed.R.Civ.P. 50(c)(1).

### CONCLUSION

Valentin did not present sufficient evidence to justify the jury's finding of liability on her national origin discrimination claim. Crozer offered a legitimate, non-discriminatory reason for firing her: her encouragement of other employees not to report laboratory errors. Valentin did not carry her burden of proving Crozer's decision to terminate her was a pretext for discrimination because of her Puerto Rican national origin. The court will grant judgment as a matter of law in favor of Crozer on Valentin's national origin discrimination claim and conditionally grant a new trial on liability and damages.

On Valentin's retaliation claims, there is no evidence from which a jury could find retaliatory treatment between September, 1993 and February, 1995. But a jury could reasonably find, on the record as a whole, that Crozer's reasons for terminating Valentin were pretextual and in retaliation not only for the EEOC charges but also for her participation in a fact-finding conference with the EEOC and Crozer officials five weeks before. The court will grant a new trial on liability and damages for retaliatory termination because

of the excessive damages, subject to plaintiff's accepting a remittitur to $117,407.92.

An appropriate order follows.

## ORDER

AND NOW, this 3d day of November, 1997, upon consideration of defendant Crozer–Chester Medical Center's ("Crozer") renewed motion for judgment as a matter of law or a new trial, plaintiff Maribel Valentin's ("Valentin") response thereto, and in accordance with the attached Memorandum, it is hereby **ORDERED** that:

1. On Valentin's claims for national origin discrimination and retaliatory treatment between September, 1993 and February, 1995:

 a. Defendant Crozer's renewed motion for judgment as a matter of law is **GRANTED**; judgment is **ENTERED** in favor of defendant Crozer–Chester Medical Center on said claims.

 b. In the alternative, defendant Crozer's renewed motion for a new trial is **CONDITIONALLY GRANTED.** See Fed.R.Civ.P. 50(c)(1).

2. On Valentin's claim for retaliatory termination:

 a. Crozer's renewed motion for judgment as a matter of law is **DENIED**.

 b. Crozer's renewed motion for a new trial is **GRANTED** unless Valentin accepts a remittitur of $117,407.92 within ten (10) days.