Catherine STOVE Plaintiff,

v.

**PHILADELPHIA SCHOOL DISTRICT Defendant.**

No. CIV.A. 98–2607.

United States District Court,
E.D. Pennsylvania.

July 22, 1999.

Catherine Stove, Elkins Park, PA, for Plaintiff.

Barbara A. McNeil, School District of Philadelphia, Philadelphia, PA, for Defendant.

### *MEMORANDUM*

LOWELL A. REED, Jr., Senior District Judge.

Plaintiff Catherine Stove ("Stove") filed this lawsuit alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a). Stove alleges that she was subject to discriminatory treatment, on the basis of her race (African American), in her employment as a Custodial Assistant at the Fitzsimmons Middle School ("Fitzsimmons") in the School District of Philadelphia ("School District").

Presently before the Court is the motion of the defendant School District of Philadelphia for summary judgement (Document No. 17) and the response of Stove (Document No. 18) thereto. Jurisdiction is proper pursuant to 28 U.S.C. § 1331. For the reasons set forth below, the motion will be granted.

### I. BACKGROUND

The plaintiff, Stove, was employed by the School District from August 1987 until March 1998, when she retired due to a disability allegedly suffered as a result of the discriminatory conduct of her supervisor in the course of her employment at Fitzsimmons. Prior to her resignation from the School District, Stove served as a Custodial Assistant. (Stove Deposition (Stove Dep.) at 12).

Stove was assigned to Fitzsimmons in November of 1996, after bidding for the vacancy at the school under the terms of a collective bargaining agreement for her bargaining unit. Stove was subsequently assigned to Cleaning Station Five. (Stove Dep. at 20–21). Stove was supervised by Cleaning Leader, Robert Brown, and Building Engineer, Frank Malandra.

By Stove's own account, Malandra confronted her about her work performance on four occasions. (Stove Dep. at 67–68). First, Stove alleges that in November of 1996, at the end of her first week on the job, Malandra told her that someone had been looking for her, wanting to know whether she had reported to work. (Stove Dep. at 25–26). Second, Stove claims that, on an unspecified date, Malandra told her that her work station was dirty and that the Regional Manager, Domenic Marinucci, had just been at the school. At this time, Malandra issued Stove a written warning concerning her unsatisfactory job performance—for not having her work station clean. (Stove Dep. at 27–28). Third, on January 23, 1997, Malandra told Stove that he had been instructed to write her up.[1] (Stove Dep. at 33). Finally, on or about January 27, 1997, Malandra issued Stove a written warning concerning her job performance, after receiving a complaint from the school nurse that her office, part of work station Five, was dirty

---

1. It is not clear from the deposition who told Malandra to write up Stove. Nor is it clear that he actually did write her up on this occasion.

and had not been cleaned in a long time. (Stove Dep. at 34–36). When Malandra and William Copes, an Assistant Manager in Facilities Management and Services for the Central West Region, inspected Stove's work station, including the nurse's office, they found its condition unsatisfactory. (Copes Affidavit ¶¶ 9–10.) On a few of these occasions, Stove threatened to report Malandra to Human Relations. (Stove Dep. at 28). On at least one occasion, Stove ripped up a written warning and screamed at Malandra. (Stove Dep. at 39–40).

Stove does not dispute that the condition of her work station was unsatisfactory. Instead, she claims that her work station was in bad shape when she arrived at the school, and that she had not been working there long enough to get the station up to standards. (Stove Dep. at 21, 27–28, 58–59).

Stove alleges that the actions of both Copes and Malandra constitutes unequal treatment. Stove claims that Copes treated her unequally by requiring her, and not Malandra, a working supervisor, to clean her work station. (Stove Dep. at 68).[2] Furthermore, Stove alleges that she received unequal treatment from Malandra because he knew that Copes was going to let him get away without having to clean Stove's work station. (Stove Dep. at 68). Stove, however, presents no evidence that Malandra treated any custodial assistant or cleaning staff person more favorably than Stove. (Stove Dep. at 43). Moreover, Stove is not aware of whether any other worker at the school had ever been disciplined by Malandra. (Stove Dep. at 61). Lastly, in the course of her employment at Fitzsimmons, Stove was never subjected to any racial epithets or derogatory terms. (Stove Dep. at 42, 45).

In addition to the above events, Stove has a history of poor work performance and of charging supervisors with harassment when her unsatisfactory performance

is brought to her attention. While at the Stoddard Fleisher Middle School ("Stoddard"), Stove was cited for unsatisfactory work performance. (Defendant's Memorandum, (Def.Mem.) Caroselli Affidavit at 2). Subsequently, she complained that the Building Engineer and Cleaning Leader (both of whom were African American) were picking on her, and asked to be moved to a different building where she could work for a white Building Engineer. (Def. Mem., Caroselli Affidavit at 2).

On January 28, 1997 and for the next fourteen months, Stove was absent from work on leave due to personal illness resulting from stress, which was allegedly caused by the harassment that she suffered at Fitzsimmons. (Stove Dep. at 53–55). In March of 1998, Stove retired from the School District, and began collecting a disability pension. (Stove Dep. at 66).

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

Defendant has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. Under Federal Rule of Civil Procedure 56(c), summary judgment may be granted when, "after considering the record evidence in the light most favorable to the nonmoving party, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). For a dispute to be "genuine," the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the moving party establishes the absence of a genuine issue of a material fact, the burden shifts to the nonmoving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

---

**2.** Stove also alleges that she received unequal treatment from Malandra because he knew that Copes was going to let him get away

without having to clean Stove's work station. (Stove Dep. at 68).

475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anderson,* 477 U.S. at 248–249, 106 S.Ct. 2505. The non-moving party may not rely merely upon bare assertions, conclusory allegations, or suspicions. *Fireman's Ins. Co. of Newark v. DuFresne,* 676 F.2d 965, 969 (3d Cir.1982). A proper motion for summary judgment will not be defeated merely by colorable or insignificantly probative evidence. *See Anderson,* 477 U.S. at 249, 106 S.Ct. 2505.

## III. DISCUSSION

Stove alleges that she was forced into disability retirement as a result of discriminatory treatment by Copes and Malandra. In so doing, Stove claims that the School District, discriminated against her on account of her race in violation of Title VII of the Civil Rights Act of 1964, ("Title VII"), 42 U.S.C. § 2000e–2(a).

The analysis of Stove's claim is governed by the burden shifting paradigm of *McDonnell Douglas* and its progeny. *See, e.g., St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To survive summary judgment, Stove must first establish a prima facie case of unlawful discrimination. *Hicks,* 509 U.S. at 505, 113 S.Ct. 2742. This creates a presumption of discrimination. *Id.* at 506, 113 S.Ct. 2742. Once a prima facie case has been established, the School District must produce some evidence of a legitimate nondiscriminatory business reason for its action. *Fuentes v. Perskie,* 32 F.3d 759, 763 (3d Cir.1994). If this evidence is produced, Stove may survive a motion for summary judgment if she produces "sufficient evidence to raise a genuine issue of fact as to whether the employer's proffered reasons were not its true reasons for the challenged employment action." *Sheridan v. E.I. DuPont de Nemours & Co.,* 100 F.3d 1061, 1066 (3d Cir.1996) (en banc); *Fuentes,* 32 F.3d at 764 (plaintiff can survive summary judgment by pointing to "some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action").

To establish a prima facie case of discrimination, Stove must show that: (1) she is a member of a protected class; (2) she performed her job satisfactorily; (3) she suffered an adverse employment action; and (4) the defendant employer has treated similarly-situated employees outside of the plaintiff's protected class more favorably. *See Kelly v. Drexel University,* 907 F.Supp. 864, 872 (E.D.Pa.1995), *aff'd* 94 F.3d 102 (3d Cir.1996); *Scott v. University of Delaware,* 601 F.2d 76, 80 (3d Cir.1979).

The defendant argues that although Stove is a member of a protected class, she cannot establish a prima facie case of discriminatory treatment because she fails to establish the other three elements of her prima facie case: (1) that she was treated differently than similarly situated employees outside of her protected class; (2) that she suffered an adverse employment action; and (3) that she performed her job satisfactorily. I agree.

### A. Similarly Situated

The Court of Appeals for the Third Circuit has not been overly demanding in the proof required to establish a prima facie case; nevertheless, Stove must make some showing that she was treated differently than similarly situated employees of different racial groups. *See Jackson v. U.S. Steel Corp.,* 624 F.2d 436, 440–441 (3d Cir.1980). Thus, Stove has the burden to prove that there were similarly situated employees outside the protected class who were treated differently. *See Valentin v. Crozer–Chester Medical Ctr.,* 986 F.Supp. 292, 299 (E.D.Pa.1997).

Stove has failed to show that she was treated differently by Malandra than similarly situated employees outside her protected class because she does not present any evidence with respect to Malan-

dra's treatment of any other employee. However, Stove argues that she satisfies her prima facie case because Copes treated her differently than he treated Malandra. Stove further argues that she and Malandra have the same responsibilities, i.e. keeping the school clean, and thus are similarly situated. Accordingly, Stove argues that Copes' refusal to require Malandra to help Stove clean her work station constituted unequal treatment. (Stove Dep. at 49).

Stove's argument rests on her own unique interpretation of Malandra's job description. (Def. Mem., Exhibit 2). According to Stove's interpretation, because Malandra's job description requires that he "supervise the custodial personnel engaged in cleaning the building" and that he "perform related work as required," i.e. clean her work station, she and Malandra are similarly situated, and thus Copes' refusal to require Malandra to help clean Stove's work station constitutes unequal treatment. (Stove Dep. at 48–51).[3] Stove's understanding of "similarly situated," however, is too broad. *See Blanding v. Pennsylvania State Police*, 12 F.3d 1303 (3d Cir.1993).

In *Blanding*, the plaintiff, a probationary officer, brought an action, alleging that his dismissal was racially motivated, in violation of Title VII. *Blanding*, 12 F.3d at 1303. The Court of Appeals for the Third Circuit held that summary judgment on the plaintiff's Title VII claim was appropriate, in part, because the plaintiff failed to show that he was similarly situated to other officers with similar disciplinary records. *Id.* at 1309. Specifically, the officers with whom the plaintiff compared himself were tenured troopers, one having served fifteen years and the other fours years, and thus were not similarly situated with the plaintiff, a probationary trooper who had served less than a year. *Id.* In other words, the plaintiff had not served long enough to become a tenured trooper,

and thus could not possibly be similarly situated to the other two officers.

Stove's title as well as the nature of her responsibilities and the requirements of her job reveal that she is not similarly situated with Malandra. Malandra's job requires, among other things, graduation from high school or its equivalent, possession of a Class A Stationary Engineer's license, at least 12 years of experience within the school system, and administrative abilities with respect to the elements of supervision and the requirements of good business administration. (Def. Mem., Exhibit 2). The requirements for Stove's position, on the other hand, are significantly less demanding: training or experience equivalent to completion of the tenth grade, working knowledge of modern cleaning methods, the ability to perform manual work, and one year of experience in custodial or maintenance trade. (Def. Mem., Exhibit 2). Moreover, Stove's total years of service in the School District— eleven years (1987–1998)—would not be sufficient to meet the minimum requirements for Malandra's position. Like the plaintiff-probationary officer in *Blanding*, therefore, Stove is not similarly situated with Malandra. While Stove and Malandra both have a responsibility to keep the school clean, just as the officers in *Blanding* had a general responsibility to protect and serve the public, they are not similarly situated with respect to implementing their responsibility because, like the officers in *Blanding*, they occupy different positions with different requirements and responsibilities.

Similarly, in *Scott*, an action was brought by a black former assistant professor, alleging that the university discriminated on the basis of race in the hiring and promotion of its faculty members. *Scott*, 601 F.2d at 76. The Court of Appeals for the Third Circuit agreed with the district court's ruling that Scott was not similarly

---

**3.** Despite this language in Malandra's job description, it is clear that Malandra is not responsible for the upkeep of the plaintiff's work station. (Def. Mem., Copes Affidavit at ¶ 8).

situated to other members of the faculty with whom he compared himself. *Scott*, 601 F.2d at 81. Scott was not similarly situated to other faculty members, the court reasoned, because the faculty members with whom Scott compared himself lacked his previous teaching experience and had contracts specifying different promotion criteria. *Id.* Likewise, Stove fails to establish that she is similarly situated to Malandra because, as their respective responsibilities make clear, they are held to different requirements. Stove, therefore, fails to establish that she was treated differently by Copes than a similarly situated employee outside the protected class.[4]

## B. Constructive Discharge

As part of her prima facie case, Stove must prove that she suffered an adverse employment action. To that end, Stove claims that the School District violated Title VII by subjecting her to harassment about her job performance that resulted in her constructive discharge. Specifically, Stove alleges that she suffered depression and anxiety from the unequal treatment to which she was subject. (Stove Dep. at 57). Subsequently, Stove voluntarily took disability retirement. (Stove Dep. at 57).

The Court of Appeals for the Third Circuit employs an objective test in determining whether an employee was constructively discharged from employment: "whether the conduct complained of would have the foreseeable result that working conditions would be so unpleasant or difficult that a reasonable person in the employee's shoes would resign." *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1079 (3d Cir.1992). Even assuming that Stove could establish that she was treated differently than a similarly situated employee outside her protected class, she cannot establish that she was constructively discharged.

In *Clowes v. Allegheny Valley Hospital*, the plaintiff brought an action, alleging a violation of the Age Discrimination in Employment Act (ADEA) based on her constructive discharge. *Clowes v. Allegheny Valley Hospital*, 991 F.2d 1159 (3d Cir. 1993). The plaintiff claimed that she was the object of unreasonably close and harsh supervision. *Id.* at 1160. As a result of this treatment, the plaintiff claimed that she began to suffer from depression and related symptoms, and required psychiatric and other medical treatment. *Id.* The Court of Appeals for the Third Circuit, however, rejected the plaintiff's claims, holding that the "law does not permit an employee's subjective perceptions to govern a claim of constructive discharge." *Id.* at 1162. The Court of Appeals noted that the plaintiff's complaints focused exclusively on her employer's allegedly overzealous supervision of her work, and declined to hold that while an employer's unreasonably exacting standards of job performance may never amount to a constructive discharge, a constructive discharge claim "based solely on evidence of close supervision of job performance must be critically examined...." *Id.* at 1161. The Court of Appeals also found it significant that the plaintiff could not rely on many of the factors often cited by employees who claim to have been constructively discharged: (1) the plaintiff was never threatened with discharge; (2) the employer never urged or suggested that she resign or retire; (3) the employer never demoted her or reduced her pay or benefits; and (4) she was not involuntarily transferred to a less desirable position, and her job responsibilities were not altered in any way. *Id.*

■ Stove does not argue that she was supervised too closely or was subject to standards that were too exacting or unrea-

---

4. In her response to the defendant's motion for summary judgment, Stove offers another argument, namely that Copes treated building engineer Derek Parker, who is black, differently than Malandra. While recognizing that Parker and Malandra occupied different positions than she did, the plaintiff wants the Court to reach the conclusion that, because Copes treated Parker differently than Malandra, then he treated her differently than Malandra as well. However, even if it is true that Copes treated Parker and Malandra differently, this argument does not establish any element of the plaintiff's prima facie case.

**604**

sonable. Moreover, even assuming that she was subject to heightened supervision, that alone is not sufficient to support a claim of constructive discharge. Indeed, her allegations bear a strong similarity to those of the plaintiff in *Clowes.* Like the plaintiff in *Clowes,* she does not make claims commonly made by employees who claim to have been constructively discharged. For instance, Stove does not claim that she was threatened with discharge, that her employer suggested that she resign or retire, that she was demoted or had her pay reduced, or that she was transferred to a less desirable position or had her responsibilities altered in any way. *See Clowes,* 991 F.2d at 1161. Furthermore, like the plaintiff in *Clowes,* Stove never requested a transfer to another position, never advised the School District that she would have to leave if changes were not made, and never filed a grievance. *Id.* Moreover, like the plaintiff in *Clowes,* Stove relies too heavily on the impact that the events in question had on her. As the Court of Appeals in *Clowes* noted, the law does not permit the subjective perceptions of the plaintiff-employee to govern a claim of constructive discharge. *See id.* at 1161–1162. Here, as in *Clowes,* the fact that Stove suffered depression and anxiety is not sufficient to establish a claim of constructive discharge. The plaintiff, therefore, cannot establish that she was constructively discharged. Thus, Stove fails to establish that she suffered an adverse employment action as a result of the alleged discriminatory treatment by Copes.

## C. JOB PERFORMANCE

■ Stove fails to establish that she performed her job satisfactorily. She does not deny that the condition of her work station failed to meet building standards. Nor does she offer any evidence to the contrary. In addition, Stove admitted that she had difficulty arriving at work on time, and there were times when she left work without having fulfilled her responsibilities. (Stove Dep. at 25, 31). Moreover, when confronted about her job performance, Stove began screaming and tore up the disciplinary memo given to her by Malandra. (Stove Dep. at 39–40). Thus, Stove cannot establish that she performed her job satisfactorily.

## IV. CONCLUSION

Thus, on the basis of the above analysis, Stove fails to establish a prima facie case of discrimination. Although she is a member of a protected class, Stove has failed to show that she: 1) was treated differently than a similarly situated employee outside the protected class; 2) suffered an adverse employment action; and 3) performed her job satisfactorily. Accordingly, the defendant's motion for summary judgment will be granted.